**SWACZYK v. UNITED STATES.**

No. 4082.

Circuit Court of Appeals, First Circuit.

June 13, 1946.

Writ of Certiorari Denied Oct. 14, 1946.

See 67 S.Ct. 77.

18

Hayden C. Covington, of Brooklyn, N. Y. (Alfred A. Albert, of Boston, Mass., of counsel), for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., of counsel), for appellee.

Before DOBIE (by special assignment), MAHONEY, and WOODBURY, Circuit Judges.

DOBIE, Circuit Judge.

Sigismund Francis Swaczyk, hereinafter referred to as defendant, has appealed to this court from his conviction by the District Court of the United States for the District of Massachusetts on an indictment charging that he violated § 11 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 311, in that he refused to submit to induction when properly so ordered. In the court below, he waived trial by jury. After hearing all the evidence which was offered, the District Judge denied defendant's motion for a directed verdict, found him guilty, and sentenced him to three years' imprisonment.

Defendant is a member of the sect known as Jehovah's Witnesses and has held the position of Assistant Company Servant of the Malden (Massachusetts) Company of this group since November 27, 1942, by appointment of the Watchtower Bible and Tract Society, Inc., of Brooklyn, New York, which is the governing body of this sect. In common with many other members of this group, he sought exemption from service as a "regular or duly ordained minister of religion." When this was denied him, after three periods of deferment on other grounds and five different considerations of his case by the Appeal Board, he was duly ordered to report for induction. At the induction station, he was found to be mentally and physically qualified for service, but, after completing all preliminary steps, he refused to submit to induction. Defendant's prosecution and conviction followed.

Before detailing more fully the circumstances surrounding defendant's claim of exemption, we think it is appropriate to review briefly what seems to be the present state of the law in this connection. Section 10(a) (2) of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 310(a) (2), after referring to the appeal boards to be set up within the Selective Service System, sets forth the jurisdiction of the local boards "to hear and determine * * * all questions or claims with respect to * * * exemption * * * from, training and service under this Act * * *." This section further provides: "The decisions of such local boards shall be final except where an appeal is authorized * * * in accordance with such rules and regulations as the President may prescribe."

The precise legal effect of this finality provision has been the subject of much litigation. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, established that no judicial review whatever of a selective service board's decision was available to a registrant who failed to exhaust all available administrative remedies. But where such remedies have been exhausted, a registrant may attack the validity of his induction order, based upon an allegedly erroneous classification by the appropriate board, as a defense in criminal proceedings. The review thereby obtained, however, is not a full rehearing de novo. The Supreme Court has very recently defined the scope which this review does encompass, in the following language:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. See Goff v. United States, 4 Cir., 135 F.2d 610, 612." Estep v. United States, 66 S.Ct. 423, at page 427, decided February 4, 1946.

That case involved two registrants, also members of Jehovah's Witnesses, who had fully exhausted all available administrative remedies, only to be told in the lower courts that no review was available except on petition for habeas corpus after induction. This interpretation the Supreme Court rejected and it remanded the case for retrial to allow the registrants "the opportunity to show that their local boards exceeded their jurisdiction." Estep v. United States, supra, 66 S.Ct. at page 429.

 Accordingly, we understand the law to be that a selective service registrant, who believes that he has been rendered subject to service by an erroneous classification by his local board (or by the appropriate appeal board), must exhaust all opportunities for administrative review before his claim may be heard in the courts. But when the administrative remedies have been pursued to the end, the courts must grant him an opportunity to show that "there is no basis in fact for the classification", either as a defense to criminal prosecution for non-compliance with orders under the Act or in habeas corpus proceedings after his induction. This opportunity will be effective, however, only where there was indeed no basis in fact for the board's action. The board is not required to weigh the evidence as would a jury and the courts are not permitted to do so.

 "It should be remembered that immunity from military service arises not as a matter of constitutional grant, but by virtue of Congressional deference to conscientious religious views. Rase v. United States, 6 Cir., 129 F.2d 204. The burden, therefore, is not upon the government, but upon one claiming exemption to bring himself clearly within the excepted class." Seele v. United States, 8 Cir., 133 F.2d 1015, at page 1022.

 Unless, then, the registrant can establish the complete lack of a factual basis for his classification, or, perhaps, some controlling bias or prejudice against him, his defense is ineffectual and he is subject to criminal penalties for his failure to comply with the board's order. See Lancaster v. United States, 153 F.2d 718, 722, decided by this Court February 19, 1946.

In connection with the application of these rules to the instant case, it is conceded that Swaczyk had exhausted all available administrative remedies and also that no evidence which he offered was excluded, either by his local board or by the trial court. Further, no procedural error, bias or prejudice on the part of either his board or the trial court is alleged. Accordingly, the sole point before us on this appeal is: Was there any basis in fact for the denial of ministerial exemption to this registrant?

In answering this question, we do not believe that any single standard, fact or circumstance is controlling. Rather, it is a matter to be judged from a view of the record as a whole. In a quite similar case, Circuit Judge Simons set forth in very clear language the problem which arises from the interpretation which this sect seeks to give to the term "minister of religion."

 "The phrase 'minister of religion' as used in the Act is to be interpreted according to the intention of the Congress, and not by the meaning attached to it by the members of any particular group. Congress undoubtedly intended to exempt such persons as stand in the same relationship to the religious organizations of which they are members, as do regularly ordained ministers of older and better

known religious denominations. This is borne out by the provision for the exempting of theological or divinity students. If we understand the appellant's argument, every member of his sect is a minister of religion and so entitled to exemption. No differentiation is to be recognized between shepherd and flock or between pastor and congregants. Followed to its logical conclusion, this would mean that all of the members of any religious group which imposes upon its adherents an obligation to teach and preach its beliefs or to make converts, are exempted under the Selective Service Act without regard to whether such activity constitutes their sole or principal vocation. It is inconceivable that it was the intention of the Congress to incorporate in the Act an exemption so broad and all-embracing. The statutory exemption must be applied in consonance with the clearly apparent purpose of the Congress, and not in response to the interpretation placed upon it by particular religious groups or their adherents. As was said of an analogous situation in the concurring opinion of Mr. Justice Cardozo in Hamilton v. Regents, 293 U.S. 245, at page 268, 55 S.Ct. 197, at page 206, 79 L.Ed. 343: 'The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government.' Or as was observed recently in Jones v. City of Opelika, [316 U.S. 584] 62 S.Ct. 1231, 1238, 86 L.Ed. 1691 [141 A.L.R. 514], decided June 8, 1942, 'The proponents of ideas cannot determine entirely for themselves the time and place and manner for the diffusion of knowledge or for their evangelism.'" Rase v. United States, 6 Cir., 129 F.2d 204, at page 209.

Adopting this view, we do not believe that we are bound exclusively by the admitted fact that this registrant was denominated a "duly ordained minister of religion" by the governing authorities of his own sect. In setting forth below some of the facts gleaned from the record, we expressly hold that no one of them is controlling, although we have no difficulty in concluding from the composite whole that such basis of fact existed as to require us to affirm the judgment of the District Court.

Swaczyk, in his original questionnaire, sought deferment or exemption on the basis of: (1) Employment in a defense industry; (2) marital status and dependency; (3) as a minister of religion; (4) as a student preparing for the ministry; and (5) as a conscientious objector to both combatant and non-combatant military service. He left blank the optional section of the questionnaire as to what classification he felt he should be given. He was first deferred on the basis of his marital status and his wife's dependency. About six months later he requested a reconsideration of his classification, on the basis of his work as a minister. At that time he submitted to the Board supporting documents including a printed and undated certificate of ordination, issued by the Watchtower Bible and Tract Society, and a certificate of membership in the local organization, signed by its presiding officer.

The Board considered his request, but continued his dependency deferment. The Chairman of the Board notified him that he was not being classified as a minister since his name did not appear on an official list of those of Jehovah's Witnesses who "by the reason of the time which they devote, the dedication of their lives which they have made, the attitude of other Jehovah's Witnesses toward them, and the record kept of them and their work" were considered to be eligible for classification as ministers, with corresponding exemption from service.

Some eighteen months later, Swaczyk's classification was again reopened. In the interval he had changed his secular employment to work for the General Electric Company, Lynn, Massachusetts, as a detail and designing draftsman. On this job his average earnings were $50 per week and he worked fifty-six hours a week at it. Also in the interval two changes in selective service procedure had occurred. Deferment on the basis of financial dependency was cancelled, and the regulations governing the classification of Jehovah's Witnesses were modified, as a re-

sult of the abandonment of the "listing" procedure, so as to place more clearly upon the local boards the responsibility for passing upon each case on its own merits. Finally, Swaczyk had been appointed to the position of Assistant Company Servant of his local religious group. The functions of this position are described as follows in a letter dated November 24, 1943, from the national organization:

"As Assistant company servant, Mr. Swaczyk assists the company servant in supervising the activities of the Church in their particular territory. He also keeps all the records of the activities of the Church and personally conducts Bible studies wherever required throughout the assignment as well as other ministerial duties.

"As study conductor he conducts Bible studies at Church headquarters and at different homes throughout the territory served by the Church where the people are unable to assemble at headquarters meetings for one reason or another."

With respect to the amount of time devoted to his ministerial duties, he made the following statement:

"I devote a minimum of 66 hours a month in preaching from house to house and to the congregation. Twice that time is spent in preparing sermons. Additional time is spent assisting in the supervision of the church."

Upon a reconsideration of Swaczyk's classification, in the light of this information, he was reclassified as a conscientious objector. He requested and received a hearing by his Board, and, when this brought no change in his classification, he took his first appeal. In the course of this appeal, he formally withdrew all claim to conscientious objector status and emphasized his desire for exemption as a minister. The Appeal Board rejected this claim and unanimously held him available for military service.

Next the question of occupational deferment was raised (the record does not disclose whether by him or by his employer) and after another consideration by the Appeal Board, he was deferred on this ground. At the expiration of this defer-

ment, reclassifications, hearings, appeals, protests and reconsiderations followed each other in kaleidoscopic fashion until, some nine months later, all remedies had been exhausted and, on the basis of a unanimous determination of the Appeal Board, he was found eligible for military service and ordered to report for induction. Upon his refusal to submit to induction, his arrest and conviction followed.

In his brief, the defendant lays great stress on the local Board's reliance on the fact that his name was not on the official list of Jehovah's Witnesses as indicative of improper action on the part of the Board. But this ignores entirely the fact that the controlling classification was made by the Appeal Board, rather than by Swaczyk's local Board. This Appeal Board considered his case not once but five times and deferred him twice, but not one single vote for ministerial exemption was cast by any member of the Board on any of the five different considerations. Nothing appears in the record to indicate any reliance on this "official list" by the Appeal Board.

We believe that the Appeal Board is in no sense bound to classify as ministers all who claim to be such. It seems that the Board may well have concluded that Swaczyk's status was more nearly similar to that of a Sunday-School superintendent or some comparable lay official in the orthodox sects, than to that of a minister of religion as the term is used in this Act. We take notice that many such lay officials in other denominations devote long hours and much energy to religious activities, without claiming that they are thereby made ministers of religion. Giving a status or an act a name does not automatically make it the same as other things previously called by that name.

■ We conclude from the record taken as a whole that there was such "basis in fact" for the classification which this defendant received as to prevent this Court from holding Swaczyk's conviction to be improper. We find no other reversible error in the proceedings and judgment of the court below and that judgment is accordingly affirmed.

The judgment of the District Court is affirmed.