**UNITED STATES of America**

v.

**Maury ENGLANDER, Defendant.**

**No. 67 Cr. 44.**

United States District Court
S. D. New York.

July 24, 1967.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, John R. Robinson, Asst. U. S. Atty., of counsel, for plaintiff.

Herman Adlerstein, New York City, for defendant.

### MEMORANDUM

FRANKEL, District Judge.

This is a prosecution under 50 U.S.C. App. § 462(a) for refusal to submit to

50. Transcript, 436.

induction for combatant training as ordered by defendant's Selective Service System Local Board. The case has been tried by the court, sitting without a jury. Actually, however, there are no real factual disputes; decision turns ultimately upon a judgment of law as to the validity of the administrative decision denying defendant's claim to exemption as a conscientious objector.

Defendant first registered with his Local Board in March of 1961. He claimed no exemption as a conscientious objector at that time, raising this question only some four years later, after he had been examined physically for induction. From November 1963, to February 1965, he was classified II-S, i. e., as a deferred student. In February 1965, he was given a I-A classification. On March 26, 1965, he reported for a medical examination, and was found fit for military service. On April 4, 1965, he was ordered to report for induction. Between the two latter dates, on March 30, 1965, he notified his Draft Board of his desire to appeal the I-A classification, and requested SSS Form 150 for submission of his claim to reclassification as a conscientious objector.

In completing the form defendant answered "yes" to the question whether he believed in a Supreme Being. Expanding upon that answer, he stated, "I believe in God." He went on to write that he had been raised "in a Jewish house-

hold," and had been taught to believe "in an omnipotent, omnipresent God who has created all life and is the Supreme Power in the Universe." He stated that he had never abandoned his beliefs and felt that his convictions "evolved from" and were "based on" the ideals "of the Judeo-Christian ethic." He said that his asserted conscientious opposition to war was based upon the foregoing beliefs; that he had developed as a personal judgment, so premised, the conviction that killing for any reason could not be justified; and that, while he had ceased participating in formal or organized religious activities, he traced ultimately to "the laws of God" his alleged convictions precluding either combatant or noncombatant service in the armed forces.

The Local Board denied defendant's application, and he appealed. Having determined tentatively that defendant was not entitled to the exemption he sought, the Appeal Board followed the familiar procedure and forwarded his file for an advisory recommendation from the Department of Justice, 32 CFR § 1626.25 (b). A hearing officer then made the customary investigation, preparing a resume which was later before the Appeal Board and is part of the record before this court. The resume followed the characteristic narrative pattern, including several unevaluated and unhelpful irrelevancies that could better be excised from such documents.[1]

1. Among the less edifying portions of the resume (which was, as a whole, by no means unfavorable to the defendant's claim) was the summary of intelligence from an evidently unstable, and unnamed, neighbor, who observed "that she has known the registrant to be a difficult and objective [sic] boy who has caused his parents heartbreak and considerable trouble. She advised that the registrant's parents are very unhappy with him, due to his nonconformist ways, and he would not obey his parents while he was growing up and insisted on doing things his own way; that registrant caused so much trouble that she herself, for the sake of the registrant's mother, went to a psychiatrist to see if something could be done for the registrant and the psychiatrist expressed the opinion that there was no hope for the registrant and that he was going to continue being the way he is. She advised that the registrant let his appearance go, refused to dress appropriately, let his hair grow long, and began to associate with persons in the Greenwich Village section of New York City; that she has never known the registrant to be in any kind of trouble but she has known him to participate in pickets protesting the war in Vietnam; and that in talking with the registrant, he is always in disagreement with any kind of United States foreign action."

To illustrate further an apparent effort toward total, if uncritical, recall, the resume reported the account of a landlady who stated "that registrant always appeared dirty, wearing his hair long

■ On July 25, 1966, the Department of Justice forwarded to the Appeal Board a copy of the resume together with its letter recommending that the conscientious objector claim be denied. The critical portions of this letter of recommendation for purposes of the prosecution read as follows:

"* * * The Hearing Officer reported that the registrant's witnesses believe the registrant to be sincere in opposing any form of war or violence. The Hearing Officer concluded that the registrant's conscientious objection is based not on religious training and belief but upon personal and moral belief, and he recommended that the conscientious-objector claim of the registrant be not sustained.

"The registrant made no claim of conscientious objection in his original Classification Questionnaire filed on March 27, 1961 nor until after he had lost the scholastic deferment which the local board gave him in November 1963, and until after he had been ordered to report for his Armed Forces Physical Examination in March 1965 and had been held qualified for military service on April 4, 1965. Sudden accessions of belief may be utterly sincere as the memorable one on the Damascus road but they seldom synchronize so perfectly with external facts making them convenient. United States v. Corliss [2 Cir], 280 F.2d 808, cert. denied, 364 U.S. 884 [81 S.Ct. 167, 5 L.Ed.2d 105]. The burden of proving his conscientious-objector claim is upon the registrant. Swaczyk v. United States [1 Cir], 156 F.2d 17, cert. denied, 329 U.S. 726 [67 S.Ct. 77, 91 L.Ed. 629]." [2]

On October 5, 1966, the Appeal Board voted unanimously to deny defendant's appeal, duly recording its determination, but giving no statement of its reasons. On November 16, 1966, defendant was ordered to report for induction. The present prosecution followed from his undenied refusal to submit to induction.

■ Defendant's main argument, the only one the court finds it necessary to reach, is that the Appeal Board had before it both a permissible and an impermissible ground for rejecting his claim; that the Department of Justice recommendation tendered both grounds; and that there is no way of knowing which one constituted the basis for the decision. Placing central reliance upon United States v. Jakobson, 325 F.2d 409 (2d Cir. 1963), aff'd, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), he argues that a conviction may not be rested upon an administrative record containing so basic an infirmity. The Court agrees.

The key sentences in the Department of Justice recommendation are the same in this case as the ones in *Jakobson*. See 325 F.2d at 411–412, and compare the language quoted above from the letter concerning Englander. Here, as in that case (id. at 412):

"The Department of Justice * * * recommended denial of [Englander's]

---

down his neck and in extremely dirty clothes; that she considers cleanliness next to Godliness, thus she cannot see how the registrant could claim to be a conscientious objector."

2. Among his several objections to the Department of Justice recommendation, most of which need not be mentioned in view of the court's ultimate ruling, defendant includes an attack upon the Department's citation of cases to document its observation that the circumstances made questionable the sincerity of defendant's belated claim. It is understandable that a lawyer, especially when he adopts, even without quotation, some particularly apt words for framing a thought, would be disposed to cite the legal authority from which the inspiration came. Nevertheless, there is at least some substance in defendant's complaint. The citation of legal authority in such a context could well have a tendency to suggest that a particularized factual judgment has somehow acquired the status of generally applicable "law." While the court does not suggest that unnecessary reference to legal precedents would be sufficient in itself to vitiate the administrative determination by a lay Selective Service Board, it may be helpful to observe that such citations ought preferably to be omitted.

* * * claim on two grounds: that he lacked sincerity, and that his objections were not based on religious training and belief within the meaning of the statute. The Appeal Board did not indicate on what ground it relied."

There is no more basis here than there was in *Jakobson* for knowing that the Appeal Board did not proceed upon "an erroneous construction of the statute" (ibid.) rather than an allowable judgment of fact within its largely unreviewable province. There are differences, to be sure, between the two Department of Justice letters. But the differences are clearly insufficient to warrant a conclusion that the infirmity held fatal in *Jakobson* is absent here.

The Government argues earnestly that the recommendation in this case issued considerably later than the decision in *Jakobson* and affirmance of that decision by the Supreme Court; that it would be "folly" and "illogical" to suppose that the specialized Department of Justice attorney who signed both recommendations committed the very error found crucial in *Jakobson;* and that these premises require a different conclusion for this case. The arguments have some weight, but not enough. It is the decision of the lay Appeal Board, whose members presumably read and deliberated on the recommendation, which is the critical operative fact in this case, as it was in *Jakobson.* Whatever undisclosed changes of meaning were in the mind of the Department attorney, the words he used, and the ambiguous message they appeared to convey, were flawed in a substantially identical way. Indeed, the able arguments of government counsel opposing defendant's motion for an acquittal served in a measurable degree to highlight the uncertainties and potential confusion the Department's letter could well have generated even for law-trained people familiar with the precedents. There is no profit in exploring these difficulties at length. It is enough to say that a key determination so fraught with doubt cannot be adequate ground for conviction upon a grave criminal charge.

Accordingly, the defendant must be, and he is, acquitted. As in *Jakobson,* 325 F.2d at 417, this judgment is "without prejudice to such new proceedings for [Englander's] induction, if any, as the Selective Service System may think it wise to undertake."