John E. BATES, Petitioner, Appellant,

v.

**COMMANDER, FIRST COAST GUARD DISTRICT et al., Respondents, Appellees.**

No. 7310.

United States Court of Appeals
First Circuit.

Heard June 3, 1969.

Decided July 24, 1969.

Daniel Klubock, Boston, Mass., for appellant.

Stanislaw R. J. Suchecki, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from the dismissal of a writ of habeas corpus in which petitioner, Bates, seeks a discharge from the Coast Guard as a conscientious objector. The principal issue is whether there is any "basis in fact" for the Coast Guard's determination that petitioner's objection to war arises from a "sociological and philosphical point of view which [he expounds] as a religious belief but which is actually a personal code."

On January 24, 1966, Bates enlisted in the Coast Guard Reserve for a six year tour of duty. Although at the time he had reservations about the war, he did not feel justified in claiming conscientious objector status. He served the required four months active duty and thereafter fulfilled his reserve obligations until July 11, 1968. On that date he wrote to the Commander of the First Coast Guard District, "I can no longer support, in any way, this country's aggression against the Vietnamese." In a second letter, dated August 2, 1968, petitioner wrote, "I cannot conscientiously support my country's war effort in Vietnam, which I consider to be warfare's 'most horrible manifestation' at this time," and stated that he wished to apply for a discharge in accordance with DOD Directive 1300.6.[1] On the basis of these two letters petitioner's application for discharge was denied on the grounds that his beliefs were philosophical and not religious. This led to further correspondence in which Bates explained that he had not yet set forth his grounds for the position he was taking.

In a letter dated September 13, 1968, he detailed for the first time the beliefs on which he based his application for discharge. This letter read in part:

"By reason of prior religious training and my developing beliefs, I am conscientiously opposed to participation

---

1. The Military Selective Service Act of 1967, as amended, 50 U.S.C.App. § 456 (j), provides in part:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or merely a personal moral code."

DOD Directive 1300.6, effective May 10, 1968, as amended December 20, 1968, implements this policy by providing that bona fide conscientious objection by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. The directive sets forth the criteria and procedures to be used in processing such claims.

in war in any form, and I cannot, in conscience, participate in Reserve activities while my country engages in war.

\*　\*　\*　\*　\*　\*

"I believe in the Supreme existence of the spirit of love. 'God is love.' I believe that when this spirit is alive in man, when we act in awareness of our brotherhood as men, we achieve a certain holiness and our human relationships improve by an immeasurable factor, a divine factor, if you will. The spirit of brotherly love is the *basis* of human relations. The concept is at the heart of the world's religions. Total commitment to this awareness is my goal, for this love must enter every aspect of human life, if ever we are to fulfill the promise of man.

"Warfare stems from the breakdown of human relationships. It involves the destruction of human life, the destruction of those things we have created out of love, the casting aside of principles based on brotherhood. The act of war is a crime against humanity. To participate in war, in any war, to support it, is to relegate the highest spirit of love to a position below the passions."

Also, in support of his claim petitioner submitted letters from three clergymen all of whom expressed the opinion that he was sincere in his beliefs. In addition, two of the three expressed the conviction that his beliefs were spiritual in nature.

Relative to his application, petitioner was interviewed by a Navy chaplain, a Navy psychiatrist[2] and a Coast Guard officer. The chaplain reported, "I believe Bates is honest about his position as a conscientious objector. \*　\*　\* I recommend approval of his request to be discharged as a conscientious objector." On October 21, 1968, the Commandant again notified petitioner that his application had been denied, but that he would be assigned to noncombatant duty.[3] The petition for habeas corpus followed.

On review of a selective service classification the sole question for the court is whether "a basis in fact" exists for the classification given. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). The scope of our review is no less restrictive in the case of those who claim conscientious objection after entering the military service. Hammond v. Lenfest, 398 F.2d 705 (2d Cir.1968); Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968); Gann v. Wilson, 289 F.Supp. 191 (N.D.Cal. 1968); DOD Directive 1300.6 IV B3(b).

In denying petitioner's request for discharge, the Commandant based his decision on the following factors: Neither at the time he registered with his draft board nor at the time he enlisted did petitioner indicate that he was a conscientious objector; that on referral of petitioner's application to the Director of Selective Service for his opinion, the Director stated that petitioner would not be classified a conscientious objector; that his "objection \*　\*　\* has been evaluated as a sociological and philosophical point of view which [he expounds] as a religious belief but which is actually a personal code"; and, finally, the hearing officer's report which in essence stated that petitioner's belief was not religious.

2. The district court made reference to a statement in the psychiatrist's report that, "He [petitioner] wants no part of any military 'system' which contributes in any way to the Vietnam war effort." There is nothing in the Commandant's order denying petitioner's application for discharge to indicate that the psychiatrist's report was relied upon in reaching his determination. As the government reminds us in its brief, the court's review is limited to the evidence which was before the Coast Guard, and upon which it acted. See Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968).

3. While petitioner's application was pending, the Coast Guard ordered him to report for 19½ months of active duty, due to his failure to attend weekly drills.

■ The Commandant's initial findings implicitly attack the petitioner's sincerity. But by holding that petitioner's present claim is inconsistent with his prior voluntary enlistment, the Commandant puts him in a "hanged if he does, hanged if he doesn't" predicament. Under DOD Directive 1300.6 IV B2, conscientious objection will not be considered unless it arose after induction or enlistment. By the Commandant's reasoning, therefore, petitioner's claim cannot be considered if it arose prior to his enlistment and is evidence of insincerity if it arose afterwards. By the force of this logic, no member of the armed services could ever qualify as a conscientious objector.[4] In this context we note that the four clergymen and the Coast Guard hearing officer with whom he had interviews never doubted his sincerity. It is well established that even under the "no basis in fact, test, doubt as to sincerity cannot be predicated on mere speculation. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

■ In accordance with standard operating procedure, the Coast Guard asked the Director of Selective Service for his opinion as to what petitioner's status would be if he were being considered for classification. The Director replied that the petitioner would not qualify as a conscientious objector but there is nothing in the record to indicate the basis for his opinion. Therefore it would be paradoxical for the Coast Guard to rely on this to bolster its case. See Cooper v. Barker, *supra* at 957–958 of 291 F. Supp.

■ Nor is there any basis in fact for the Commandant's conclusion that petitioner's beliefs are not religious but are sociological and philosophical and comprise a personal moral code. The Commandant relies on four letters written by Bates initiating his request to be discharged as a conscientious objector. In these letters the petitioner manifested his belief that "war [is] a criminal violation against humanity," (August 2), that the Vietnam war is "warfare's most horrible manifestation at this time," (August 2) and that he had "no intention of engaging in this training or in any other type of Reserve training as long as the war in Vietnam continues." (July 11). On the basis of this correspondence alone, petitioner's claim had once been rejected.

On August 30, 1968, Bates wrote to the Commandant, stating that he was "somewhat dismayed" that he hadn't been sent the appropriate forms and that his request was summarily disposed of. He further stated,

"But for the brief explanation I offered in my initial correspondence with you, I have not discussed the grounds for my taking serious action

---

4. Moreover, petitioner seems to fit squarely within that section of DOD Directive 1300.6 IV B2, which states, "[C]laims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered."

There is nothing in the record to indicate that petitioner's religious beliefs matured *prior* to his enlistment although it is clear that he was troubled by what he regards as an immoral war. In his application for discharge, he stated:

"At the time of my induction, I had some serious questions about participation in the military, to the extent that the Coast Guard recruiting officer asked me to discuss my beliefs with my family and friends until my mind was clear. I was at an age when I was caught between an adolescent rejection of the organized religion I had experienced as a youth and the formulation of new religious attitudes and beliefs based on the essence of my religious upbringing. Therefore, although I was opposed morally and politically to the war in Vietnam, I did not feel I could make honest claim to conscientious objection to all war."

Petitioner's explanation of how his beliefs developed constitutes a *prima facie* case which must be accepted in the absence of some evidence to the contrary. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Washington, 392 F.2d 37 (6th Cir. 1968). There is none.

in opposition to the Vietnam war. Therefore, the denial of my request in that my 'conscientious objection is based on stated philosophical rather than bona fide religious grounds' seemed to be somewhat premature."

■■ The fact that petitioner wrote letters prior to submitting his application for discharge expressing political opposition to the war does not disqualify him from being a conscientious objector. See Fleming v. United States, 344 F.2d 912 (10th Cir.1965). The fact that he may abhor the Vietnam war and regard it as "warfare's most horrible manifestation at this time" does not detract from his religious belief which is amply documented. To hold otherwise would require a finding that religious belief cannot coexist with political opinion. The statement of such a proposition contains its own refutation. We observe in this connection that the hearing officer found that "SN BATES is sincerely opposed to the use of force on an individual or organized basis as a solution to any of the problems confronting an individual or mankind generally." In view of all the evidence, the most that can be said is that petitioner's views are partially motivated by factors other than religious belief. There exists no basis in fact for finding that these are "*essentially* political, sociological or philosophical." (Emphasis ours.)

The last factor on which the Commandant relied for his decision was the report of the hearing officer. This officer was a Lieutenant Commander, a lawyer by profession and the teacher of an eighth grade church school at the Presbyterian Church of which he was a member.[5] In evaluating petitioner's beliefs he purported to apply the test enunciated in United States v. Seeger, 380 U.S. 163, 166, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965), i.e., "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox be-

lief in God of one who clearly qualifies for the exemption." In doing so, however, we think he erred to the substantial prejudice of the petitioner.

■ To begin with, the hearing officer stated that in order to qualify, the applicant must regard opposition to all war as an "essential tenet of his religious faith" and found that petitioner's beliefs did not meet this standard. It has been held, however, and we think properly, that "[t]he religious belief need not lead inexorably to conscientious objection, that is to say, it need not be a tenet of the faith as in the case of Jehovah's Witnesses. It is enough if the registrant has a religious faith and, by reason of faith, he is opposed to participation in all war." United States v. St. Clair, 293 F.Supp. 337, 343 (E.D.N.Y. 1968). It is apparent that petitioner's beliefs bring him within these precepts.

The hearing officer's findings are fairly summarized in paragraph six of his report:

"I do not feel that SN BATES feelings are religious. In my opinion he espouses non-violent protest as an effective social mechanism of change and happens to feel Jesus Christ was an effective practitioner of that art. He therefore feels a social kinship with Jesus and chooses to call this religion. If he was truly religious and did espouse the tenets of the Society of Friends, as he claims, I believe he would have done more than carry on a few casual conversations with members of the Society of Friends he has happened to meet. He probably lacks the insight to realize that his intense social views are not religious—not in response to something outside himself."

We find no basis in fact or law for these conclusions. As the Court emphasized in *Seeger*, "Some believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day

5. DOD Directive 1300.6 VI B4 requires that the hearing officer be "knowledge-  able in policies and procedures relating to conscientious objector matters."

when all men can live together in perfect understanding and peace." 380 U. S. at 174, 85 S.Ct. at 858. See Crane v. Hedrick, 284 F.Supp. 250 (N.D.Cal. 1968). During the hearing petitioner stated,

> "As far as my religious beliefs, I can only say that I believe that love is more or less the highest spirit. It's a divine spirit. As more and more men are acting out of love for each other, they act in a divine manner. As Jesus said, the Kingdom of heaven is for thee. You have the power to act in a moral manner—in a manner that recognizes your brotherhood."

■ The hearing officer's belief that the dividing line between "intense social views" and religion is whether the belief is stimulated by "something outside himself" is fundamentally erroneous. As the Supreme Court made clear in *Seeger*, the statute does not distinguish between externally and internally derived beliefs, that such a determination would be impossible as a practical matter, and was not intended by Congress. 380 U.S. at 186, 85 S.Ct. 850.

Nor is the hearing officer's statement that petitioner had only carried on "a few casual conversations" with members of the Society of Friends supported by the record. In fact, petitioner said he had talked with Friends, found his beliefs to be strongly aligned with theirs and indicated that he planned to "follow up" the relationship after his present situation was resolved.

No less disturbing is the hearing officer's subjective interpretation of petitioner's beliefs, when the Court has said the question is essentially an objective one,[6] and that great weight must be attributed to a registrant's claim that his belief is rooted in religious faith. *Seeger*, at 184, 85 S.Ct. 850. This is particularly compelling where there has been a finding of sincerity, as was the case here.[7] Whatever the stage of development of petitioner's insight, it is of no consequence to this inquiry. It matters only that he sincerely believes that his convictions are religious in origin.

■ We are satisfied, as our examination demonstrates, that there was no basis in fact on which the Coast Guard could make its finding that petitioner was not a conscientious objector as that term is contemplated by applicable statutory and decisional law.

The judgment of the district court will be vacated and the case will be remanded with instructions to grant the writ of habeas corpus.

---

6. In *Seeger*, the Court said:
"While the applicant's words may differ, the test is simple of application. It is essentially an *objective* one, namely, does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption?" 380 U.S. at 184, 85 S.Ct. at 863. (emphasis ours)

"Their [local boards and courts] task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, *in his own scheme of things*, religious." 380 U.S. at 185, 85 S.Ct. at 863. (emphasis ours)

7. DOD 1300.6 V C admonishes those applying the criteria for conscientious objection as follows: "Evaluation of the sincerity of a claim of conscientious objection requires objective consideration of professed belief not generally shared by persons in the military service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own." This caveat has not been scrupulously followed here.