Robert J. ARMSTRONG, Jr., PFC-E3, U. S. 51982606, Social Security Number 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, Plaintiff,

v.

Hon. Melvin LAIRD, Secretary of Defense; Hon. Stanley Resor, Secretary of the Army; General Albin F. Irzyk, Commanding General, U. S. Army Training Center, Fort Devens, Massachusetts, Defendants.

Misc. Civ. No. 70-49-J.

United States District Court, D. Massachusetts.

April 13, 1971.

Douglas G. Moxham, William P. Homans, Jr., Thomas Shapiro, Boston, Mass., Rowland Watts, Workers Defense League, New York City, Gerald Solk, Germany, for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., George V. Higgins, Mary M. Brennan, Asst. U. S. Attys., for defendants.

## OPINION

JULIAN, District Judge.

Plaintiff, who is a member of the United States Army, brought this petition for a writ of habeas corpus seeking a review of the legality of his detention by the Army and praying for an order directing his discharge from the Army on the ground of his conscientious objection to participation in war by reason of his religious training and belief.

An evidentiary hearing was held on the petition.

The plaintiff was called to the stand by his counsel and was permitted to testify over the objection of the defendants

---

1. See Bates v. Commander, First Coast Guard District, 1969, 1 Cir., 413 F.2d 475, 477, note 2, where it is stated: " * * *

the court's review is limited to the evidence which was before the Coast Guard, and upon which it acted [cases cited]."

who took the position that the Court's review on the merits of the Army's denial of the plaintiff's application for discharge is limited to the evidence which was before the Army.[1] Plaintiff, however, at no time raised any objection to any part of the testimony which he himself gave.

Plaintiff does not question the legality of the procedures followed by the Army in arriving at its finding that plaintiff's "objection to service is not based upon religious training and belief." Plaintiff's sole contention is that there was no basis in fact for the Army's finding.

In addition to denying the plaintiff's contention, the defendants claim that the petition "is barred by laches" and "by forum-shopping."

As to "laches," defendants point to plaintiff's lack of diligence in pressing his claim in the Army and in the Courts.

> "Sixteen months passed between the denial of petitioner's military claim and his assertion of the same claim in this Court. He spent one of those months on his initial absence without leave, thirteen more on his second absence without leave. During those fourteen months he did nothing to press his claim in the Army, and but little to bring it before a civilian court." (Defendants' Memorandum of Law, p. 8.)

A far stronger case must be made than has been made here before a plaintiff's claim that he is being illegally held in custody could properly be dismissed on the ground of "laches" without an adjudication on the merits. See Johnson v. Resor, 1971, D.C.Mass., 321 F. Supp. 563.

As to "forum-shopping" by the plaintiff, the facts are substantially these: Plaintiff had been absent without leave for about thirteen months and had been living and working as a civilian in New York when he decided on advice of counsel to come to Massachusetts and surrender to military authorities at Fort Devens. Prior to coming here for that purpose plaintiff had never had any significant ties or contacts of any kind in Massachusetts. He was never domiciled here; he never worked or went to school here; and no member of his family lived here. During his military service he had never had a duty assignment in Massachusetts. His assignments were limited to Fort Belvoir, Virginia, and Fort Dix, New Jersey. I find that he chose to return to military control at Fort Devens solely for the purpose of filing his petition for a writ of habeas corpus in this District. The evidence discloses no other persuasive reason why he chose to surrender in Massachusetts in preference to New York, where he had been living most of the time during his unauthorized absence from the Army and where his attorney was situated and practiced law, or to New Jersey, the State of his domicile and where Fort Dix and the unit to which he was assigned were situated. The issue of "forum-shopping," however, and the legal consequences of such shopping were not sufficiently litigated or researched by counsel to warrant a conclusion of law with respect to such issue.

I proceed to a determination of the substantive issue in the case, namely, whether there was a basis in fact for the Army's finding that the plaintiff's objection to service was not based upon religious training and belief.[2]

Plaintiff was born on March 7, 1947. He was drafted into the United States Army on January 23, 1968, pursuant to the provisions of the Military Selective Service Act of 1967, for a period of two years. He has long been an active member of the Lutheran Church, into which

---

2. The question to be decided is stated in Bates v. Commander, First Coast Guard District, 1969, 1 Cir., 413 F.2d 475, at p. 477:

> "On review of a selective service classification the sole question for the court is whether 'a basis in fact' exists for the classification given. * * * The scope of our review is no less restrictive in the case of those who claim conscientious objection after entering the military service."

he was baptized when a child and confirmed in 1962. The Church supports the position of those members who are not conscientiously opposed to participation in war as well as the position of those members who are conscientiously opposed to war. The Church leaves the question to the conscience of the individual member.

Plaintiff did not seek classification as a conscientious objector before induction. In his application for discharge he makes the following statement:

"No, I did not apply to my Local Board of Selective Service for classification as a conscientious objector prior to induction into the Army because I was not a conscientious objector prior to my induction."

Plaintiff testified at the hearing before me that his religious beliefs are the same now as they were when he answered and filed his Selective Service questionnaire.

After induction plaintiff took his basic and advanced training at Fort Belvoir, Virginia. In his application for discharge (page 2) plaintiff asserts that a "final culmination of the repulsions" he felt in basic training "along with the catalytical agent of Vietnam and M16 Training" brought about "a crystallization" of his conscientious objection to all war. He testified that he came to realize that the Army is an instrument of violence and that its purpose is the destruction of human life. He admitted, however, that he knew before he entered the service that the Army was an instrument of violence and destruction.

After completing his basic training plaintiff was assigned to advanced individual training consisting of three phases. He completed the first two. He graduated second in his class from the second phase. His advanced training, however, was not extended into the third phase. Instead, by special orders dated June 12, 1968, the plaintiff and several other soldiers were transferred from Fort Belvoir to the Army Oversea Replacement Station at Fort Dix, New Jersey, for further assignment to a specified Army unit, APO San Francisco (Exh. B, Incl. # 12). The directives and special instructions contained in the special orders made it quite plain that the destination of the personnel transferred was a port of embarkation and overseas service in Vietnam. The special orders directed the plaintiff to depart from Fort Belvoir on June 22, 1968, and to report at Fort Dix on July 20, 1968, and to be on leave between the two dates with his leave address at his home address in Paramus, New Jersey.

In compliance with the special orders plaintiff departed from Fort Belvoir on June 22, 1968. At this time it was a matter of common knowledge that military service in Vietnam involved duty of an extremely hazardous nature.

Plaintiff testified that he became a conscientious objector about the middle of March, 1968. There is no credible evidence that he disclosed it to anyone. I find that he did not. During the interval between March 28, 1968, and the time he received orders transferring him from Fort Belvoir to Fort Dix he engaged in combat training without objection; he attained the grade of SP/4; he completed the first of the three phases of advanced individual training; he graduated second in his class at the conclusion of the second phase.

Up to June 22, 1968, when he left Fort Belvoir, there was nothing in what plaintiff said or did, as disclosed by the evidence before the Army or by any credible testimony before me, that in any way suggests the aversion to the Armed Forces which he expresses in his application for discharge. On the contrary, the fact that he gained promotion to SP/4 during the course of his training and the fact that he graduated second in his class at the conclusion of the second phase of advanced individual training tend to negate the existence of any such aversion.

There was no evidence before the Army and no credible testimony before me that plaintiff at any time prior to his

departure from Fort Belvoir on June 22, 1968, ever made his alleged conscientious objection to war known to anyone.

At the expiration of his leave on July 20, 1968, plaintiff reported to the Oversea Replacement Station at Fort Dix. His application for discharge is dated August 5, 1968. Following the filing of the application the Army, in accordance with paragraph 6(b) of AR 635–20, re-assigned the plaintiff to a replacement unit pending action on his application for discharge.

Following review by a board of three members, each of whom recommended disapproval, the reviewing officer disapproved the application on February 7, 1969, on the ground that "Applicant's objection to service is not based upon religious training and belief." On the same date the defendant Secretary issued an order disapproving the application on the identical ground. (Exh. A.)

In his application for discharge (page 3) plaintiff stated:

"No, I have not given public expression to my views. I have discussed my views freely in private conversations with friends."

However, no particulars are given.

On page 4 of his application he gives seven references. He prefaces the names with this statement:

"One word to you about my references before I introduce them. I want you to notice that these individuals, insignificant according to 'The Great Society', are real people talking from their hearts, their very beings and having been passed up by your society, without a voice, for so long they are not really sure what to say. But, what they do say is so earnest that I defy you not to believe them. If you do disbelieve them you *will* lose them forever. It is for this purpose I did not include the weighty names of any doctors, lawyers, Congressmen, Mayors, superintendent of schools, etc. that I know. You may be testing my sincerity but do not forget for a second 'we' are also testing yours."

Letters from the persons named as references are attached to the application. In only one of these is there a clear, specific mention made of plaintiff's claim of conscientious objection to war. This is found in the letter signed by Mr. and Mrs. Rumpeltin, dated July 25, 1968. It states:

"I have known Robert Armstrong, Jr. for the past nine (9) years. My husband has known him for the last four (4) years.

"We have both been very close to Bob. We double dated almost every weekend while we were in high school and we saw Bob whenever he came home from college. * * *

"Since Bob has been in the service we have been down to Fort Dix, with Karen [plaintiff's girl friend], to see him and whenever he was home the four (4) of us had many, many dates together.

    *    *    *    *    *    *

*"This past weekend* [3] *was the first time Bob ever labeled himself as a 'conscientious objector.'* We both believe that Bob is doing what he believes in his heart to be right." (Emphasis supplied.)

In his statement dated July 24, 1968 (Exh. B, Incl. # 1), Lt. Col. Sterling, Staff Chaplain, reported as follows:

"On 22 July 1968 I counselled SP/4 Robert J. Armstrong, Jr. * * * concerning his application for discharge under AR 635–20 as a conscientious objector to military service.

"In my opinion, the source of SP/4 Armstrong's conscientious objector belief is his own literal interpretation of the biblical Sixth Commandment: i. e., Thou shalt not kill, evoked by his feelings of revulsion against the violence of combat.

"The sincerity of SP/4 Armstrong's expressed beliefs is questionable. Doubtless he is determined in his

---

3. The "past weekend" would have been Saturday and Sunday, July 20 and 21, 1968.

stand, but I think this is caused by his being ordered to Vietnam."

First Lt. Vincent P. Clark, II, "Commanding"—his command is not identified—interviewed the plaintiff and submitted a report dated August 5, 1968 (Exh. B, Incl. # 3). The report states:

"It is my recommendation that [plaintiff] be released from military service on the basis of Conscientious Objection.

"This conclusion is based on my belief that the individual is sincere in his beliefs and has conscientiously tried to orient his personal views with those of the Army, although these attempts have been unsuccessful."

A letter from the Rev. McCurtis W. Allison, pastor of St. Mark Lutheran Church, to which plaintiff and his parents belonged, is attached to the application for discharge (Exh. B, Incl. # 2). It is dated August 7, 1968, and addressed "To Whom It May Concern." It states in substance that the writer had no significant contact with plaintiff until two weeks before the letter was written, when he had a lengthy appointment with him and discussed the subject of plaintiff "being an undeclared conscientious objector." The letter continues:

"Although the position of the Lutheran Church is that Robert [the plaintiff] should have declared his objection prior to entering the armed forces, I believe that Robert's inherent tendency toward non-violence was formalized into pacifism and objection to the war in Viet Nam as he engaged in the basic and advanced training of the armed forces.

"As a former chaplain serving in the armed service, *I do not agree with Robert's position and his desire to make the Vietnam issue a matter of*

*individual selection. * * * "*[4] (Emphasis supplied.)

Capt. Pilkington, in a statement dated January 23, 1969 (see Exh. B), recommended approval of plaintiff's application and gave the following reason for his recommendation:

"[Plaintiff's] beliefs seem to be sincere. As I see it, they do stem from a period prior to entering the army and have come to surface in basic training and advance infantry training."

It does not appear whether Capt. Pilkington ever interviewed the plaintiff, or knew him personally, or relied solely on the statements contained in the plaintiff's application.

The applicable statute, directive, and Army regulation are the following:

Section 6(j) of the Military Selective Service Act, 50 U.S.C. App. § 456(j), provides that no person shall "be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form".

Department of Defense Directive No. 1300.6 (May 10, 1968):

"IV B * * * bona fide conscientious objection * * * by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. Objection to a particular war will not be recognized."

Army Regulation 635–20:

"3. Policy. a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

4. In this connection see Gillette v. United States, 401 U.S. 437, at page 447, 91 S.Ct. 828, at page 835, 28 L.Ed.2d 168, decided March 8, 1971:

"* * * we hold that Congress intended to exempt persons who oppose participating in all war—'participation in war in any form'—and that persons

who object solely to participation in a particular war are not within the purview of the exempting section, *even though the latter objection may have such roots in a claimant's conscience and personality that it is 'religious' in character."* (Emphasis supplied.)

b. * * * Requests for discharge after entering military service will not be accepted when—

* * * * * *

(4) Based on objection to a particular war.

c. All requests for discharge based on conscientious objections will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

d. Final determination on all requests for discharge based on conscientious objection * * * will be made at Headquarters, Department of the Army."

 The pivotal issue of fact in this case is the sincerity of the plaintiff's claim that by reason of religious training and belief he is conscientiously opposed to participation in war in any form. The plaintiff's sincerity is a question of fact.[5] Sincerity is also a state of mind. It can only be determined by a careful scrutiny of all the available evidence, direct and circumstantial, that has a bearing on the issue of its existence and nonexistence.

The reason given in the Secretary's order for the disapproval of plaintiff's application was a finding in effect that plaintiff was insincere in claiming that he was a conscientious objector by reason of religious training and belief. I find that there was a basis in fact for that conclusion.

There was sufficient evidence before the Secretary of the Army to warrant the inference that plaintiff's application for discharge was not based upon any religiously motivated conscientious objection to participation "in war in any form" but, instead, upon his objection to participation in the war in Vietnam. The Secretary of the Army's finding that petitioner's "objection to service is not based upon religious training and belief" is supported by the evidence. I find that there was a basis in fact for that conclusion and that his action in disapproving plaintiff's application for discharge was in conformity with Army Regulation 635–20 and was justified.

It is ordered that the petition be dismissed.