Robert J. ARMSTRONG, Jr., Petitioner-Appellant,

v.

Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.

No. 71–1244.

United States Court of Appeals, First Circuit.

Argued Nov. 3, 1971.

Decided Feb. 1, 1972.

Aldrich, C. J., dissented and filed opinion.

Rowland Watts, New York City, with whom Barry Satlow, New York City, was on the brief, for appellant.

George V. Higgins, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on the brief, for appellees.

Before ALDRICH, Chief Judge, and BREITENSTEIN * and COFFIN, Circuit Judges.

* Of the Tenth Circuit, sitting by designation.

**522**

BREITENSTEIN, Circuit Judge.

Petitioner-appellant Armstrong brought habeas corpus for release from the Army on CO grounds. He was inducted in January, 1968. In August of that year he applied for a CO discharge. In February, 1969, the Conscientious Objector Review Board unanimously rejected his application. The district court, 325 F.Supp. 1042, held that there was a basis in fact for the action of the Review Board and dismissed the petition.

The application for a CO discharge sets forth the petitioner's religious training in the Lutheran Church, his belief in God, his opposition to violence, and statement that "I am a conscientious objector to all war." The application is supported by a statement from his pastor and statements from six others who are either relatives or friends. Also included were a letter from Chaplain Sterling which recognized a religious belief, but said that sincerity was doubtful because Armstrong had been ordered to Vietnam; a statement from unit commander Clark recommending approval and commenting that Armstrong appeared sincere in his belief; and a statement from the assistant adjutant to the commanding officer recommending disapproval on the basis of Chaplain Sterling's report. The government brief concedes that "Armstrong made out a prima facie case of conscientious objection by his application for discharge."

The application was sent to the Conscientious Objector Review Board, the three members of which took the following separate actions:

Major Whitman: "Recommend disapproval—based on personal moral beliefs which didn't 'crystallize' until he received orders for Vn."

Chaplain Turner: "This young MAN has taken too seriously the training techniques of basic training. He is afraid! There is a psychological basis for his request but cannot be considered a religious belief. He gives no basis that this comes from training or any other influence which would qualify him as a CO."

Major Weiler: "I doubt a sincere religious objection to war."

The reviewing officer disapproved the application on the ground that the "Applicant's objection to service is not based upon religious training and belief." The Secretary of the Army disapproved for the reason given by the reviewing officer.

At trial the petitioner testified over the objection of the government. The evidence should not have been received. Court review is limited to the evidence which was before the Army and on which it acted. Bates v. Commander, First Coast Guard District, 1 Cir., 413 F.2d 475, 477 n. 2. The district court, apparently after considering both the Army records and the testimony of the petitioner, held that there was a basis in fact for the conclusion of insincerity and for the finding that "objection to service is not based on religious training or belief." We cannot accept the findings and conclusion of the trial court because we do not know to what extent they are based on the Army file or on the improperly received evidence.

To qualify for CO classification within the operation of the Selective Service System, a registrant must show (1) that he is conscientiously opposed to participation in war in any form, Gillette v. United States, 401 U.S. 437, 443, 91 S.Ct. 828, 28 L.Ed.2d 168; (2) that his opposition is based upon "religious training and belief" as the term has been construed in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308; and (3) that his objection is sincere, Witmer v. United States, 348 U.S. 375, 481–482, 75 S.Ct. 392, 99 L.Ed. 428. The three tests are cumulative and each must be satisfied. Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L.Ed.2d 810. Although the men-

tioned decisions arise out of Selective Service cases, we believe that under Ehlert v. United States, 402 U.S. 99, 106–107, 91 S.Ct. 1319, 28 L.Ed.2d 625, they apply equally to those who have performed a portion of their obligated service and request discharge because of conscientious objection.

The statements of the members of the Review Board are unsatisfactory, confused, and internally inconsistent. There is no consensus. One member referred to "personal moral beliefs," another to a "psychological basis * * * [which] cannot be considered a religious belief," and the third doubted "a sincere religious objection to war." It is impossible to determine on which grounds the Appeal Board made its recommendation.

■ After considering the application and the recommendation of the Board, the reviewing officer, whose position was accepted by the Secretary, disapproved on the sole basis of lack of "religious training and belief." By placing his action on the religious component of the three-part test for determination of CO status, the reviewing officer, by implication, seems to have been satisfied that the two other tests, sincerity and objection to all war, were met. Accordingly, disapproval depends entirely on the religious factor. Our consideration of the record convinces us that under Seeger and Welsh standards there is no factual basis for the rejection of the CO claim because of lack of religious training and belief. Absent a basis in fact, the rejection of the CO application cannot be sustained.

Reversed and remanded with directions to grant the writ.

---

1. The entire definition became and remains, one "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code." 50 U.S.C.App. § 456(j).

ALDRICH, Chief Judge (dissenting).

The recent history of the conscientious objector exemption has been marked by difficulties inherent in any legal formula in an area that is highly political and personal. Initially the problem was minimized by limiting the status to those satisfying the empirically verifiable requirement of affiliation with a "well-recognized religious sect or organization . . . whose existing creed or principles [forbade] its members to participate in war in any form . . .." 40 Stat. 76, 78. In 1940 there was substituted for affiliation the requirement of "religious training and belief."[1] For social, or perhaps other reasons, this change produced no great immediate consequences, administrative or otherwise. In recent years, however, with even dubiously legal resistance to an unpopular war becoming not only acceptable but fashionable in certain quarters, the number of conscientious objector applications has proliferated.

Whether or not this growth has provoked an impatient administrative response, it has been matched by significant judicial liberalization. Indeed, it seems that just as Voltaire could say that the Holy Roman Empire was neither holy, nor Roman, nor an empire, it could now be said that the exemption is available to those who are not religious in any orthodox sense, who have had no training whatever[2] and whose assertion cannot be empirically tested. See Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308; United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733. It may be that this broadening was required by the Constitution,[3] but it has in any

---

2. "Training" has changed to exposure to views, or even mere personal thoughts, which serve the purpose of bolstering the sincerity of the professed belief.

3. Not, of course, that a CO exemption is constitutionally required, see Welsh v. United States, ante at 356, 90 S.Ct. 1792, 26 L.Ed.2d 308 (Harlan, J., concurring), but because of possibly uncon-

event greatly increased the difficulty of determining equitably who must serve and who need not. Ironically, it is arguable that the effort to assure that no one entitled to the exemption is denied has produced greater inequity; shifting the burden of war from those educated enough to seek counsel, and articulate enough to mouth proper verbal formulations, to those less fortunate. Whether this enlarging of the exemption may result in some future Congress finding it to have over-played its hand is not before us, but I regret that the court's formalistic approach today adds to the administrative difficulties of the Armed Services and the Selective Service.

The court correctly speaks of three tests that must be satisfied in order to qualify: (1) the opposition must be to war in any form; (2) the opposition must be based upon what is considered religious belief; and (3) the objection must be sincere. Clay v. United States, 1971, 403 U.S. 698, 700, 91 S.Ct. 2068. It also recognizes the basis-in-fact test, which narrows the scope of our administrative review. *See* Bates v. Commanding Officer, 1 Cir., 1969, 413 F.2d 475. But then it finds no basis in fact, not so much, it seems, because there was none, but because the administrative officials used the wrong language.

It is, of course, true that the basis-in-fact test, when combined with the obligation that a board state the reasons for its decision, *see* United States v. Edwards, 1 Cir., 1971, 450 F.2d 49, requires, once the applicant presents a prima facie case, that affirmative evidence appear in the record to support the board's particular finding. Clay v. United States, ante at 704–05, 91 S.Ct. 2068, 29 L.Ed.2d 810; United States v. Haughton, 9 Cir., 1969, 413 F.2d 736. Thus, when a board gives as its reason for denying the exemption that the applicant's beliefs do not meet the definition of religion, if the court finds no basis for that conclusion it will declare the

classification invalid even though there might be ample reason to find that the applicant had failed another test not alluded to by the board. *See, e.g.,* United States v. Abbott, 8 Cir., 1970, 425 F.2d 910, 913–14 n. 4; United States v. Jakobson, 2 Cir., 1963, 325 F.2d 409, 413–17, aff'd sub nom. United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, United States v. St. Clair, E.D.N.Y., 1968, 293 F.Supp. 337, 344. Applying this principle the court reads the language used by the Review Board and by the reviewing officer as basing disapproval solely on lack of "religious training and belief," which it interprets as turning on the definition of religion. From this it concludes that the officer and members were satisfied, or must be regarded as satisfied, as to the other two tests. Since the applicant's asserted claim was clearly religious on its face, and since he was, impliedly, found to be sincere, the court accordingly states there was no basis in fact for the Board's ruling. I believe this unfairly misreads the record.

The reviewing officer, in stating the reason for denying the application, "Applicant's objection is not based on religious training and belief," simply repeated the statutory language. His conclusionary statement, merely employing the words of the act, fails to identify which one or more of the three cumulative tests applicant allegedly failed. We are thrown back, accordingly, to the individual statements of the Review Board. *Cf.* United States v. Jakobson, ante; Kretchet v. United States, 9 Cir., 1960, 284 F.2d 561. If, in turn, the Board members' statements are thought unsatisfactory on their face, I believe they should not be read in isolation, but in the light of the record on which the Board was acting. Even an ambiguous statement of reasons should be adequate if their meaning appears clearly from the record. *Cf.* Caverly v. United States, 8 Cir., 1970, 429 F.2d 92. Of

stitutional distinctions, if it is to be granted at all. *Id.,* at 356–61, 90 S.Ct. 1792. *See generally* The Supreme Court,

1964 Term, 79 Harv.L.Rev. 56, 115–16 (1965).

course, if the record suggests a reason for the member's action which it is clear from the language of their statements they did not rely on, the Board's action is still without basis in fact. That, however, is not the case.

The record discloses a considerable basis in fact for a finding that religious beliefs, however properly expressed, were not truly the source of applicant's objection to participating in war. We start with the fact that Staff Chaplain Sterling, as a result of a counseling interview, doubted the "sincerity [of applicant's] expressed belief," concluding that his position was based upon his having been ordered to Vietnam. From my standpoint this is a vital matter. I am not attacking the cases which hold that a review board cannot be the one to initiate the question of lack of sincerity. *See* United States v. Abbott, ante at 913 n. 4, and cases cited. If, however, an actual interviewer cannot doubt sincerity, then the burden of proof that is upon the applicant, *see* Carson v. United States, 5 Cir., 1969, 411 F.2d 631, 633, cert. denied 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119; Swaczyk v. United States, 1 Cir., 1946, 156 F.2d 17, cert. denied 329 U.S. 726, 67 S.Ct. 77, 91 L.Ed. 629, would seem essentially meaningless.[4] There was ample evidence here to corroborate the chaplain's conclusion: the applicant had no background of deep religiosity; after going through the allegedly brutal training course, he continued on through the next step with high grades, and even his close friends never heard him profess conscientious objector beliefs until the end of his leave and the disagreeable prospect of Vietnam was upon him. While a late crystallization of a belief is not alone sufficient to disprove its sincerity, Unit-

ed States ex rel. Tobias v. Laird, 4 Cir., 1969, 413 F.2d 936, it should be a relevant consideration. Rothfuss v. Resor, 5 Cir., 1971, 443 F.2d 554, 559–60.[5] Together I believe there was ample evidentiary basis.

While the record casts doubt on applicant's sincerity, there was clearly no basis in fact for finding that applicant's asserted beliefs, if truly held, and if the true source of his objection, were not religious. The only way the Board could conceivably have reached the conclusion the court indicated would be if it believed that since his religious sect (Lutheran) was not pacifist, applicant himself could not qualify. Only the most unambiguous statement to that effect could convince me that the Board thought a requirement eliminated by Congress twenty-five years ago was still extant. On so clear a record the court should have concluded that the Board based its actions on a finding of insincerity, unless their statements of reasons could not reasonably bear that interpretation.

One may agree that what Major Whitman said is hopelessly ambiguous. I think it unfair, however, to read Chaplain Turner as meaning that what applicant said was not religious in terms. It seems to me that his statement can be read as meaning that regardless of what applicant said, his real basis was psychological fear, and that in the light of the record Turner was reviewing, this was what he meant. Certainly Major Weiler's statement "I doubt a sincere religious objection to war," in the light of Chaplain Sterling's conclusion, is a fully adequate layman's statement of finding conscious, or unconscious, untruthfulness of applicant's claim. In choosing to reverse by charging the Board with being

---

4. This is not the time for me to do more than note my disagreement with cases indicating that an interviewer is required as matter of law to believe him truthful unless it has "hard, provable, reliable facts that provide a basis for disbelieving the claimant." Helwick v. Laird, 5 Cir., 1971, 438 F.2d 959, 963. No plaintiff ever fared that well in a court of law.

5. Nor should it be forgotten by the courts that cite the sudden conversion of Saul, *e. g.,* United States v. Englander, S.D. N.Y., 1967, 271 F.Supp. 182, 184; United States ex rel. Lohmeyer v. Laird, D.Md., 1970, 318 F.Supp. 94, 102, that even that famous conversion was marked by objective criteria. See Acts, IX :1–9.

"unsatisfactory, confused and internally inconsistent," the court may well be reading Boards in general a lesson on the need of preciseness, but I believe the court, before reversing, should have examined the statements in the light of the record, and made an attempt to see what, fairly, the Board believed it was saying. If, as I think the case here, the Board's intent can be fairly gathered, I do not think it should be faulted because a court might have chosen its language more meticulously. I must dissent.