**Robert Pack BROWNING, Plaintiff and Petitioner,**

v.

**Melvin LAIRD, etc., et al., Defendants and Respondents.**

No. 50868.

United States District Court,
N. D. California.

Dec. 8, 1969.

Addendum Jan. 18, 1971.

Treuhaft, Walker & Burnstein, Doris Brin Walker, Oakland, Cal., for plaintiff-petitioner.

James L. Browning, Jr., U. S. Atty., Sheldon Deutsch, Asst. U. S. Atty., San Francisco, Cal., for defendants-respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

In May, 1963 petitioner Browning enlisted in the Army Reserve for a six year period. He served on active duty less than two years and more than 180 days. In October, 1967 petitioner after coming to the gradual conclusion that he conscientiously opposed participation in war in any form filed an application for discharge as a conscientious objector. In April, 1968 such application was disapproved by his commanding officer, Captain Gwin, and subsequently was disapproved by the Sixth U. S. Army through First Lieutenant Clayton and by the Office of the Secretary of the Army. In July, 1968 his reserve unit was ordered to report for annual active duty training; petitioner did not report, nor has he reported for active reserve duty since that time.

In May, 1968 the Department of Defense issued Directive No. 1300.6, which provides in pertinent part that certain applicants for a conscientious objector discharge "will be afforded an opportunity to appear in person before an officer in the grade of O–3 or higher, who is knowledgeable in policies and procedures relating to conscientious-objector matters." Pursuant to this directive and to petitioner's request he was given another interview by Captain Gwin. In October, 1968 petitioner's counsel requested a new interview because of Captain Gwin's ignorance of conscientious-objector matters and because of his having prejudged the petitioner's case. A new hearing was granted without official explanation before Captain Cheadle, who had been previously attached to the 91st Committee Group along with Captain Gwin. Captain Cheadle was aware that Captain Gwin had twice disapproved Browning's application. Approximately two months after the interview with Captain Cheadle petitioner received a notice signed by Captain Gwin stating that "[t]his headquarters has just been informed by 6th U. S. Army Headquarters that your request for discharge as a conscientious objector has been denied."

In August, 1969 the Army Board for Correction of Military Records denied Browning's application for correction of his Army records. Petitioner's six-year period of enlistment expired in May, 1969. However, the government contends that he is obligated by his reservist contract to report for active duty because of unsatisfactory reserve training.

Petitioner raises the following claims:

(1) the order to report for active duty in excess of the 45 days specified in the contract constitutes a violation of

his contractual rights and due process of law; [1]

(2) there was no basis in fact for the denial of Browning's conscientious objector claim;

(3) petitioner was denied due process in that he did not receive a hearing before a person knowledgeable concerning conscientious objector matters;

(4) petitioner was denied due process in that he did not receive a hearing before a person who was impartial;

(5) petitioner was denied due process in that the Army regulations under which conscientious objector claims are processed fail to set forth the standard or burden applicant must meet in convincing the Army of the merits of his claim.

For the reasons set forth below the court finds that there was no basis in fact for the Army's rejection of petitioner's claim and therefore it is unnecessary to reach the other issues.

Petitioner's application for a conscientious objector discharge is approximately 20 pages long. The court feels that the following summary is an accurate reflection of his claim. Petitioner believes in a Supreme Being. The Supreme Being is manifested by a moral force of respect among men. This force is apparent when one views the actual history of mankind. This historical experience shows that man has perceived certain "universal verities." These universal verities make up the "Universal moral law" and are expressed by Jesus' Commandment to treat your neighbor as you would have your neighbor treat you. After man recognizes this universal law it then becomes "his duty to act in accordance with the law." For when man follows the Commandment of Jesus he is following "the supreme moral law of the universe * * * any action contrary * * * is a violation in

some degree of the supreme moral force." Therefore, petitioner concludes that his "duties to the Supreme Being do not conflict with (his) duties in any relationship; they coincide."

■ This type of religious belief closely parallels the discussion of beliefs of the Ethical Culturalists which is approved by the Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965). It establishes a prima facie claim for conscientious objector status. Because it is difficult to determine which interview by the military authorities was relied on to deny petitioner's claim, it is necessary to go through them one by one.

Captain Gwin conducted the first interview. He gave four reasons for the denial of the claim: (1) "Pvt. Browning is not a Conscientious Objector in the commonly accepted definition of the term. (i. e.; one apposed to violence based on well defined religion tenants)."

(2) "My interview with him revealed no opposition to the need to bear arms in the common defense, if the country was indeed menaced or threatened."

(3) "Pvt. Browning is not in agreement with this country's position in Vietnam and does not feel that any threat exists from that quarter."

(4) "It is my opinion that the arguments advanced by Pvt. Browning represent a rationalization of his objection to one military action and do not support his claim to conscientious objector status."

■ The first reason is improper in law. One does not have to be opposed to violence "on well defined religion tenants." The tenets held by the applicant can be non-orthodox religious beliefs. See United States v. Seeger, *supra*; United States v. Alvies, 112 F.Supp. 618 (N.D.Cal.1953).

---

1. In light of the court's decision that there was no basis in fact for the denial of the petitioner's claim there is no need to decide this question. However, unless the present case can be factually distin-

guished from the case Schwartz v. Franklin, 412 F.2d 736 (9th Cir. 6/10/69), this court would find itself constrained by the decision therein rejecting petitioner's claim.

■ The second, third and fourth reasons are basically the same as they relate to Captain Gwin's conclusion that petitioner opposes only the war in Vietnam. Although Captain Gwin refers to the interview there is no transcript of such interview and his conclusions are rebutted by the application itself. The government does not argue that the denial of petitioner's claim was based on insincerity, nor can Captain Gwin's reasons be fairly read to support such a conclusion. Furthermore, it cannot be said that Captain Gwin's inaccurate understanding of the law regarding conscientious objectors did not prejudice his view of petitioner's claim.

■ Lieutenant Clayton recommended disapproval of petitioner's claim on the grounds that "his beliefs appear to be based upon a personal philosophy of pacifism rather than religious belief. He states he does not customarily attend church." The fact that a person does not attend church is not grounds for denial of one's claim, and may even be legally irrelevant in view of *Seeger. See*, United States v. Johnson, 321 F.Supp. 1178 (N.D.Cal.1969).

The other reason given by Lieutenant Clayton makes little sense. The philosophy of pacifism is a belief that it is wrong to kill. Pacifism usually is considered as part of a religious code of ethics. Petitioner's application shows that this belief in non-violence is part of his religious belief.

■ After the passage of DOD No. 1300.6 Captain Gwin again interviewed petitioner. Some time after the interview Captain Gwin stated that "the last request for discharge as a conscientious objector was no more than a repeat of the previous one. * * *" The court must assume that Captain Gwin's reasons for rejecting such claim were also the same as in the previous hearing and therefore incorrect in law.

■ Browning was also given a hearing by Captain Cheadle who gave no reasons for his recommendation of denial of the claim.[2] Subsequent to that hearing petitioner received a letter signed by Captain Gwin stating, without reason, that the 6th Army Headquarters had denied his claim. The Board for Correction of Military Records refused to find "material error or injustice" and therefore stated that there was not a sufficient basis for a review by its department. It cannot be said that the determination made by the 6th Army Headquarters and the Board for Correction of Military Records cured the misapplication of the law by the military authorities who held the interview and were primarily responsible for the determination on the claim. Here, unlike the Selective Service System, the 6th Army Headquarters and the Board for Correction of Military Records do not grant a *de novo* review. Furthermore, even if they did hold such a review it would not, in this situation, cure the defect. As the Court of Appeals for the Ninth Circuit recently stated in a similar situation, "where, as here, an improper standard had been injected into the classification procedures at a lower level, and the record does not disclose the reasons for the appellate board's action, the classification cannot be sustained." United States v. Atherton (9th Cir. Oct. 9, 1969).

■ The government argues that there are two possible reasons for denying petitioner's claim: (1) that his claim is based on moral not religious principles; (2) that he is opposed to the war in Vietnam in particular, not to war in any form. It is true that petitioner often uses the word "moral"; however, the correct test is not "moral versus religious", it is whether there is a "religiously" derived creed as distinguished from a "personally derived creed." *See* United States v. Seeger, *supra*, 380 U.S. at 186, 85 S.Ct. 850; Fleming v. United

---

2. Without in any way commenting on the substantiality of the claim, the court does not decide whether it was prejudicial that Captain Cheadle had been attached to the same group as Captain Gwin and knew that Captain Gwin had already twice disapproved the application.

States, 344 F.2d 912 (10th Cir. 1968); United States v. Atherton, *supra*. Moral concepts can be a red-herring, for morality is an essential part of religion. Indeed, the very question of "what is the moral good" is a traditional religious question. United States v. Seeger, *supra*, 380 U.S. at 182, 85 S.Ct. 850. Petitioner discusses the "[u]niversal moral law" and "[a]n act of moral force at work in the universe," in a way which puts them clearly within a religious context.

Even if one focuses on petitioner's discussion of this moral force at work throughout man's political and sociological history this does not take petitioner's belief out of the realm of conscientious objection. *See* United States v. Seeger, supra at 186, 85 S.Ct. 850. Petitioner comes easily within the broad definition laid out by the Supreme Court in *Seeger* and described accurately in Fleming v. United States, *supra*, 344 F.2d at 916: "It may be true that appellant has been influenced, * * * more by sociological and philosophical views than by religious beliefs or the dictates of a deity. But, it is also clear that he has been influenced by religous training and belief."

With regard to the government's claim that petitioner is opposed only to the war in Vietnam there is only one sentence in the 20 page application which would support such a position. Petitioner stated the following: "I would find any active participation in the Armed Forces conscientiously intolerable at this time."

The sentence can be interpreted by stressing the last three words, thereby, viewing it as a refusal to fight *only* in Vietnam. However, a statement that one will not fight in Vietnam does not logically preclude a further statement that one will not fight in *any war*. Therefore, the court must look to the application as a whole.

Pvt. Browning states that he does not believe in the "killing of human beings under any circumstances (other than immediate self-defense) including so-called

capital punishment or the *indiscriminate massacre of war*." (emphasis supplied). Although petitioner's statement "at this time" may be viewed as the culmination of four pages of written anger at the particular war in Vietnam, it does not detract from, and in part explains the process by which he became conscientiously opposed to all wars. He explains how he was too young to have understood the reality of Korea, and only the actuality of Vietnam forced him to assimilate his views and to put his religious notions into harmony with his personal actions.

The war in Vietnam was the triggering agent for petitioner's rejection of participation in any war.

The fact that petitioner might have political objections to this particular war does not disqualify him from conscientious objector status if he also has a religious objection to all war. As the court succinctly stated in Bates v. Commander, First Coast Guard District, 413 F.2d 475, 479 (1st Cir. 1969): "[t]o hold otherwise would require a finding that religious belief cannot coexist with political opinion. The statement of such a proposition contains its own refutation."

The court should be wary of taking one sentence out of context, for this procedure of "culling here and there" has been disapproved by the Supreme Court in First Amendment speech and press cases, See Schaefer v. United States, 251 U.S. 466, 483, 40 S.Ct. 259, 64 L.Ed. 360 (1920) and obscenity cases. See Roth v. United States, 354 U.S. 476, 488–489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In the situation before this court, petitioner's claim taken as a whole establishes his belief in non-violence and his opposition to participation in all war. There is no basis in fact for the rejection of his application for discharge as a conscientious objector.

It is hereby ordered that Robert Pack Browning's petition for writ of habeas corpus be granted, and that, being illegally restrained of his liberty, he be dis-

charged from the custody of the United States Army and custody of respondents.

## ADDENDUM TO ORDER OF DECEMBER 8, 1969 GRANTING PETITION FOR WRIT OF HABEAS CORPUS.

Since the filing of the order in this case, the court notes that the United States Court of Appeals for the Ninth Circuit has vacated its decision in United States v. Atherton (9th Cir., Oct. 9, 1969), cited by this court in the instant case. Subsequently, the Court of Appeals handed down a new decision in United States v. Atherton, 430 F.2d 741 (9th Cir., Sept. 10, 1970). Although the portion quoted by this court in the instant case is no longer in the opinion, the principle remains unchanged, and the new decision in *Atherton* in no way alters the conclusions reached by this court.