Quentin E. McKENNEY, Jr., Petitioner,

v.

Albin F. IRZYK, as he is Commanding Officer of Fort Devens, Stanley R. Resor, as he is Secretary of the Army, and Melvin R. Laird, as he is Secretary of Defense.

Misc. Civ. No. 70–79.

United States District Court, D. Massachusetts.

Oct. 6, 1970.

Peter Terris, Palmer & Dodge, Boston, Mass., for plaintiff.

Herbert F. Travers, U. S. Atty., Paul Ware, Jr., Boston, Mass., for defendant.

## OPINION

GARRITY, District Judge.

This matter came before the court on a petition for a writ of habeas corpus filed on July 14, 1970. There is no dispute about the underlying facts. The petitioner, PFC Quentin E. McKenney, Jr., is on active duty with the United States Army and has been under the custody and control of the military authorities at Fort Devens, Massachusetts, since January 22, 1970. On February 17 petitioner submitted to his com-manding officer a proper application for discharge from the military by reason of his conscientious objection to war. In accordance with Army Regulation 624–20(4) (AR 624–20(4)) he was afforded an interview with a military chaplain, Captain Jasper J. Dean, and a psychiatric examination by a military psychiatrist. In addition, he was interviewed on March 23 by Major Joyce W. O'Claire and on April 3 by Colonel Bruce C. Fisher. On May 11, the Conscientious Objector Review Board (the "Board") convened for the purpose of considering petitioner's application.

The record before the Board consisted of petitioner's application and supporting documents; the reports of the military psychiatrist, Chaplain Dean, Major O'Claire and Colonel Fisher; DD Form 1589 completed by Lt. Col. Von D. Alford, and the recommendation of Captain Butler, Acting Assistant Adjutant General. By a vote of 2–1, the Board determined to disallow petitioner's application for discharge and sent petitioner a copy of its opinion dated May 11, 1970, as follows:

1. To qualify for discharge under AR 635–20 a person must be conscientiously opposed to participation in war in any form by reason of religious training and belief. McKenney fails to meet this condition because he is not substantially motivated by views derived from religious training and belief. This finding is based on the following facts in the record:

a. Chaplain Jasper Dean personally interviewed McKenney and concluded that his objection is not substantially motivated by views derived from religious training and belief. "It is my opinion that the applicant's request for discharge by reason of conscientious objection does not have a religious basis and origin." The Board places great weight on Chaplain Dean's opinion because his training and experience makes him uniquely qualified to render a professional opinion as to the religious quality of a stated belief.

b. The hearing officer and all of McKenney's commanders found that McKenney's objection is not substantially motivated by views derived from religious training and belief.

On July 14 petitioner brought this writ of habeas corpus alleging *inter alia* that "his rights have been and are being violated in that the aforesaid denial was arbitrary and capricious and without basis in fact in the content of petitioner's application or in any other evidence considered therewith."

The applicable statute is the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j), which provides,

"(j) Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

Upon consideration of the file of the proceedings before the Board and the applicable legal principles, the court finds that the Board applied an incorrect standard to the determination of the case before it. In United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, the Supreme Court construed the term "religious training and belief" broadly to include non-traditional as well as traditional expressions of religion. This broad interpretation of the above statute was followed in Bates v. Cmdr. First Coast Guard Dist., 1 Cir., 1969, 413 F.2d 475, and most recently in Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. In discussing its application of *Seeger*, the court in *Welsh* stated:

"The Court made it clear that these sincere and meaningful beliefs which prompt the registrant's objection to all wars need not be confined in either source or content to traditional or parochial concepts of religion. It held that § 6(j) 'does not distinguish between externally and internally derived beliefs,' *id.*, at 186 [85 S.Ct. 850, at 864], and also held that 'intensely personal' convictions which some might find 'incomprehensible' or 'incorrect' come within the meaning of 'religious belief' in the Act. *Id.*, at 184–185 [85 S.Ct. 850]. What is necessary under *Seeger* for a registrant's conscientious objection to all war to be 'religious' within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." 398 U.S. 339, 340, 90 S.Ct. at 1796.

A careful reading of the record and of the Board's decision in this case reveals that the Board based its disapproval of petitioner's request for discharge almost exclusively on the fact that petitioner's beliefs were not religious in the traditional sense. The Board stated in its letter opinion of May 11 that it based its decision on Chaplain Dean's opinion that petitioner's "request for discharge by reason of conscientious objection does not have a religious basis and origin" and on the finding of the hearing officer and all of petitioner's commanders that his objection was not substantially motivated by views derived from religious training and belief. In his memorandum of February 27, 1970, Chaplain Dean wrote:

"Even though PFC McKenney states that he holds Baptist beliefs, he has not united with any particular church in this denomination. It is my opinion that the applicant's request for discharge by reason of conscientious objection does not have a religious basis and origin."

Clearly, Chaplain Dean determined that petitioner's beliefs did not have a "religious basis and origin" primarily because of his tenuous connection to an

organized church.[1] This determination showed an improper understanding of the concept "religion" in a conscientious objection inquiry after *Seeger*. Yet the Board placed great reliance on it.

The Hearing Officer, Major Joyce W. O'Claire, in her memorandum of March 23 concluded as follows:

"While this soldier appears to be sincere in his stated beliefs at the moment, there is very positive evidence of strong political influence. Nothing was found in his religious background to constitute the required religious training prerequisite to separation; his beliefs are therefore considered to be based on essentially political views and on a merely personal moral code."

Major O'Claire focuses on two related aspects of petitioner's claim—(1) the lack of a religious background and (2) the political nature of its origin—and concludes that petitioner's beliefs are "based on essentially political views and on a merely personal moral code." Evidently Major O'Claire, like Chaplain Dean, conceived of the term "religion" in the narrow, traditionalist pre-*Seeger* sense. As to her comment on petitioner's politics, the following language from *Welsh, supra,* is applicable:

"We certainly do not think that § 6(j)'s exclusion of those persons with 'essentially political, sociological, or philosophical views or a merely personal moral code' should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency. In applying § 6(j)'s exclusion of those whose views are 'essentially political, sociological, or philosophical' or to those who have a 'merely personal moral code,' it should be remembered that these exclusions are definitional and do not therefore restrict the category of persons who are conscientious objectors by 'religious training and belief.' Once the Selective Service System has taken the first step and determined under the standards set out here and in *Seeger* that the registrant is a 'religious' conscientious objector, it follows that his views cannot be 'essentially political, sociological, or philosophical.' Nor can they be a 'merely personal moral code.' See United States v. Seeger, 380 U.S., at 186, 85 S.Ct. 850, 13 L.Ed.2d 733." 398 U.S. 342–343, 90 S.Ct. at 1798.

To paraphrase *Welsh,* once Major O'Claire determined that petitioner was sincere in his beliefs as stated in his application[2] and at the oral interview

---

1. There was no question raised by anyone about petitioner's sincerity. Chaplain Dean's comments on this aspect of petitioner's claim are as follows: "Based upon my interview with the applicant, there is the indication that he is sincere about his beliefs."

2. See, for example, the following excerpts from petitioner's application for discharge:
  "Thus I can not participate in the destruction of man. I believe that taking the life of another under any circumstances breaks the clear command of God, 'Thou shall not kill,' and sows the seeds for future violence by in-

creasing fear, hatred, and resentment. Peace is the Christian's business, it is his responsibility. We know that real peace can not come until the conditions of peace have been established, and peace can only come if there is a measure of genuine love among men. I believe that my loyalty as a citizen must be related to my highest loyalty to God and thus to love and peace. I understand my role as a Christian to be a follower of the way of love and goodwill toward all men. Regardless of the evil and ill will of others, I as a Christian shall only respond with kindness, love and goodwill, seeking to overcome these evils."

she could not conclude that they were based on "essentially political views and on a merely personal moral code." [3]

A determination based on an impermissible legal standard cannot be allowed to stand. Moreover, and importantly, respondent failed to show either in his filings or at the hearing that a denial of petitioner's request for discharge had any basis in fact under the applicable legal standards as set forth in *Seeger, supra,* and *Welsh, supra.* Therefore, no purpose would be served in remanding the case to the Board for redetermination.

Judgment will be entered allowing the petition for a writ of habeas corpus. Respondents are directed to issue the orders necessary for petitioner's discharge from the United States Army.

---

3. The other reports relied on by the Board are similar to those of Chaplain Dean and
Major O'Claire and subject to the same analysis.