**David P. SILVERMAN, Captain, USAF 491–46–6642FV, Petitioner,**

v.

**Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents.**

**Misc. Civ. No. 71–92–J.**

United States District Court, D. Massachusetts.

March 15, 1972.

David P. Silverman, pro se; Lawrence C. Weisman, Lynn, Mass., of counsel.

Joseph L. Tauro, U. S. Atty., Robert B. Collings, Asst. U. S. Atty., for respondents.

## MEMORANDUM OF DECISION

JULIAN, Chief Judge.

Petitioner, a captain in the United States Air Force, brings this habeas corpus proceeding requesting that the Court order his discharge from military service as a conscientious objector.

Petitioner, David P. Silverman, enlisted in the United States Air Force on August 8, 1967, at the age of twenty-four. After completion of his training at Officers Training School, petitioner was commissioned as a Second Lieutenant and assigned to active duty with the Base Civil Engineer's Office at Oxnard Air Force Base in California. On September 10, 1969, petitioner requested cancellation of his Career Reserve Status, and received an approved date of separation from the Air Force of February 15, 1972. In January of 1970, petitioner was transferred to L. G. Hanscom Field in Bedford, Massachusetts, where he presently serves as Base Civil Engineer Officer.

On November 4, 1970, petitioner tendered his resignation from the Air Force, asserting his claim to conscientious objector status. In accordance with Air Force Regulation 35–24,[1] peti-

---

1. AFR 35–24 implements Department of Defense Directive 1300.6, May 10, 1968, as amended. See Silberberg v. Willis, 420 F.2d 662, 664 (1st Cir., 1970). AFR 35–24, as modified by an "Unofficial Change Sheet," entitled "Interim Procedures for Processing Conscientious Objection," dated August 31, 1970, incorporates the standards set forth in Section 6(j) of the Military Selective Service Act

tioner submitted an application for classification and discharge as a conscientious objector, together with nine letters of reference from Air Force personnel, relatives and friends supporting his application and attesting to the sincerity of his beliefs. Pursuant to Air Force Regulation 35–24, petitioner was interviewed by a psychiatrist and a chaplain designated by his commanding officer. On December 7, 1970, a hearing was held before Lieutenant Colonel Grosvenor H. LeTarte, a duly appointed hearing officer. At the hearing petitioner made a sworn statement, then responded to questions put by the hearing officer and petitioner's attorney, the latter of whom closed the hearing with a statement in behalf of petitioner. On December 28, 1970, the hearing officer submitted his report and recommendation of disapproval of petitioner's tender of resignation to the Base Commander. By a letter dated April 15, 1971, the Department of the Air Force informed petitioner of its declination to classify him as a conscientious objector and its refusal to accept his resignation.

■ Petitioner does not contend that the procedural requirements of AFR 35–24 were ignored, or in any way transgressed, by the Air Force in the processing of his application. Petitioner's only contention is that the conclusion of the Air Force, viz., that the evidence adduced before the hearing officer fails to demonstrate that petitioner is legally entitled to classification as a con-

scientious objector, is without a "basis in fact" in the record. As the petitioner himself concedes, the scope of this Court's review of the question so raised is very narrow. The test is not whether the decision of the Air Force is correct, or whether this Court would reach the same or a different conclusion upon evaluation of the same evidence.[2] The sole issue is whether there exists any basis in fact in the record for the administrative denial of petitioner's application for classification as a conscientious objector. See Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir., 1969), and cases cited; DoD Directive 1300.6 IV(B) (3) (b); 50 U.S.C. App. § 460(b) (3). Furthermore, in conducting its review, the Court is "limited to the evidence which was before the [military agency] and upon which it acted. See Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L. Ed. 59 (1947); Hammond v. Lenfest, 398 F.2d 705 (2d Cir., 1968)." Bates v. Commander, First Coast Guard District, supra, at 477, n. 2. The only evidence before the Court is the official Air Force record of Captain David P. Silverman, submitted by both parties and containing certified copies of the following documents: 1) Report of Hearing and Correspondence, including documents entitled Statement of Conscientious Objection (with attached application), Appointment of Hearing Officer, Tender of Resignation, Information Sheet, Statement of Member, Statement of Chaplain,

of 1967, as amended, 50 U.S.C. App. § 456(j), and the decision of the Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In addition, DoD 1300.6 IV(B) (3) (b) requires evaluation of conscientious objection claims in accordance with the standards applied by the Selective Service System and the teaching of *Welsh*.

2. Nor is the appropriate standard that of "substantial evidence," so commonly enunciated as the scope of judicial review of administrative determinations. See Davis, Administrative Law Treatise, § 29.07, and cases cited. Although a studied reading of pertinent Supreme

Court decisions, e. g., Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) does little to clarify the operational difference between the "substantial evidence" and "basis in fact" tests, it seems clear that the latter represents the more restrictive standard. See *Davis, supra*, at § 29.07, n. 17; Silberberg v. Willis, 420 F.2d 662, 664, n. 1 (1st Cir., 1970).

Statement of Psychiatrist, DD Form 1589—Summary Sheet, *Welsh* Decision, Report of Hearing, Letters of Reference, and Hearing Officer's Recommendation; 2) recommendations of reviewing authorities, specifically Major General Joseph J. Cody, Jr., Commander, USAF, Brigadier General Harvey W. Eddy, DCS/Personnel, USAF, Lieutenant Colonel Samuel G. Powell, Assistant Chief, Field Extension, Office of the Chief of Chaplains, Captain Gettis A. Blocker, Director of Personnel Program Actions, USAF; 3) nine letters of reference; 4) the memorandum of the Secretary of the Air Force declining to classify Captain Silverman as a conscientious objector within the meaning of AFR 35–24, and refusing to accept his tender of resignation under the provisions of paragraph 16m, AFR 36–12, and 5) the letter advising the Base Commander of the action of the Secretary of the Air Force.

In determining that petitioner did not qualify as a conscientious objector, the Air Force hearing officer, in his recommendation, stated the reasons for his finding in six numbered paragraphs, which follow:

"4. Lt Silverman impressed me as an individual who sincerely detests the war in Southeast Asia and the effects that war is having on the political situation in the United States. I do not believe, however, that he is conscientiously opposed to war in general, but, rather, that he is politically motivated against the war in Southeast Asia.

"5. In his application Lt Silverman made numerous remarks which reflect his political and sociological beliefs. He stated, 'It is also my belief that the concepts of national sovereignty, devotion to a particular flag, or specific territorial control are obsolete.' He added that ' . . . nationalism is a dangerous commodity' and that 'I rank the phenomena of war and nationalism directly.' He stated, 'I want very much to lead a full and meaningful life and because of my deep belief that it is extremely priceless and comes only once, there is very little I would willingly die for.' Lt Silverman does not base his application on a strictly religious basis although he has had formal religious training in the Jewish faith. He attributes his beliefs not only to this training but also to his educational training and experiences. He alleges that continued service, even in his present noncombatant status, violates his principles.

"6. Lt Silverman asserts that he first began to question 'the validity of the military and the concept of whether war was necessary or evil' while in college. However, he concluded at that time that although 'destruction and killing were obviously horrible things, they were necessary for protection against evil elements.' He adds that he entered the Air Force not anticipating enjoying military life but definitely not being a conscientious objector at that time. His present beliefs, according to Lt Silverman, were affected by several events. The first occurred while Lt Silverman was at Officers Training School where he was shown movies by his squadron training officer who had been a pilot in Vietnam. These movies consisted of 'sequence upon sequence' of napalm bombs being dropped and exploding and led Lt Silverman to ask himself how this officer 'could be so proud, as his speech and manner indicated, of such a horrible phenomenon.' Lt Silverman also found it antithetical while attending several awards parades that servicemen decorated and commended for their bravery in South Vietnam could be so honored for 'such destructive actions.' He expresses annoyance that so much money has been spent to support the military and to wage war in Southeast Asia while so very little has been channeled into environmental and social welfare problems. The two events which contributed the most toward crystalizing Lt Silverman's present beliefs were the Cambodian 'incursion' and the Kent State incident.

"7. In my opinion, the foregoing clearly depicts a person who is politically motivated toward an end to the war in Vietnam. On 15 April 1970, for example, he participated in the Vietnam War Moratorium Parade which was held in Cambridge, Massachusetts. I got the impression while speaking with Lt Silverman that had it not been for Cambodia and the resultant incident at Kent State, he would not have submitted his application as a conscientious objector. Certainly there is nothing else in his application which indicates a valid reason for a change in his beliefs since he entered the United States Air Force.

"8. In summary, after considering all the evidence presented at the hearing, I do not believe that Lt Silverman's resignation should be accepted. Lt Silverman avows that when he entered the military service he expected it would not be to his liking, and yet by enlisting in the Air Force he substantially extended the period of time during which he would have to serve. He has already served more than three years in the military service without undergoing any visible physical or psychological reaction. Finally, the evidence that Lt Silverman is politically motivated is, as set forth above, overwhelming. I firmly believe he can serve the remainder of his military service commitment without compromising his religious, moral or ethical beliefs.

"9. I recommend that Lt Silverman's tender of resignation be disapproved."

The Court cannot properly fulfill its reviewing function without carefully analyzing the determination of the hearing officer in light of those facts which appear in the Air Force record. It is petitioner's contention that such an analysis would demonstrate that, while the statements upon which the hearing officer explicitly relied do in fact appear in the record, the conclusion of the Air Force Personnel Board, based upon the finding of the hearing officer and expressed in the recommendation of Captain Gettis A. Blocker, dated March 22, 1971, has no basis in fact in the record. In that recommendation, submitted to the Secretary of the Air Force, "[a]fter a thorough review of the entire file," Captain Blocker stated that "we believe that Captain Silverman has not met the criteria of AFR 35–24. Concur with the comments of the Assistant Chief, Field Extension, Office of the Chief of Chaplains (HCFE), each indorsing commander and those made by the Hearing Officer. Captain Silverman's views are essentially political and sociological and tend to establish him as a 'selective' objector—failing to conclusively establish his opposition to all wars." Captain Blocker proceeded to recommend that petitioner's request for conscientious objector status be denied "in that there is insufficient evidence to substantiate a claim of conscientious objection on religious, moral or ethical grounds." [3] As it was the conclusion of Air Force Per-

3. Pursuant to DoD 1300.6 and AFR 35–24, Captain Silverman was interviewed by a psychiatrist and base chaplain. The report of the psychiatrist simply states that examination revealed no evidence of mental disease, including character or personality disorder, neuroses, or psychoses. The statement of the chaplain reads as follows:
"To: Commander
L.G. Hanscom Field
Bedford, Mass. 01730
1. I am writing concerning 1st Lt David Paul Silverman, 491466642FV, of Base Civil Engineers, L.G. Hanscom Field. Lt Silverman is applying for release from the service on the basis of his belief as a conscientious objector to all forms of military force or service. I have interviewed Lt Silverman and questioned him widely on his beliefs. Although his early training was Reform Jewish at Temple Israel in St. Louis, Missouri, where he was confirmed, his present attitudes of conscience seem to me to stem from his belief as a moral humanist.
2. I questioned him losely [sic] on various episodes in his history, including that of the Warsaw Ghetto uprising and events during the Nazi holocaust during the second world war. He insisted that even under those extreme provocations, he would remain non-violent

sonnel Board upon which the Secretary of the Air Force expressly relied in declining to classify petitioner as a conscientious objector, it is that conclusion upon which the present inquiry must focus.

In characterizing the views of Captain Silverman as "essentially political and sociological," Captain Blocker employed the language of Section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j), which provides in pertinent part as follows:

"Nothing contained in this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

Furthermore, the views of petitioner, so characterized by Captain Blocker, "tend to establish him as a 'selective' objector —failing to conclusively establish his opposition to all wars." Prescinding from any internal inconsistency which might inhere in such a statement, the Court adopts, for purposes of analysis only, the Government's interpretation of Captain Blocker's conclusion, i. e., that petitioner's beliefs are essentially political and sociological, not moral, ethical, or religious, and held with the strength of traditional religious beliefs, see Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), or, in the alternative, that petitioner fails to demonstrate his opposition to all war, see Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). Both tests must be satisfied before petitioner may prevail; failing either, petitioner lacks ground upon which to challenge the Air Force determination.

and object to the use of force, even under such extreme situations. These views express a consistency toward nonviolence that is impressive. We discussed the attitudes and techniques of Gandhi and of Martin Buber, a Jewish philospher [sic] who was a pacifist. 3. Although Lt Silverman had long held felt that he was inclined toward nonviolence, it was only this past summer that his beliefs crystalized and he determined that he actually could not in conscience take part in any enterprise or undertaking that would support military action or violence. After serving in the Air Force for three years and being relatively close to the normal time of his separation from the Air Force, and serving at present in a non-combatant section that has little danger of ever seeing actual combat, I am convinced that his present application for conscientious objector status could only come from a sincere commitment to conscience.
s/Rabbi Judea B. Miller
RABBI JUDEA B. MILLER
Jewish Auxiliary Chaplain"
It is pertinent to note the recommendations of two intermediate reviewing authorities, Brigadier General Eddy and Lieutenant Colonel Powell. The recommendation of Brigadier General Eddy reads as follows:
"TO: USAFMPC/DPMAK
Randolph AFB TX 78148
Recommend disapproval. First Lieutenant Silverman has not provided sufficient evidence to establish that he is conscientiously opposed to war in any form, or to all wars at all times.
FOR THE COMMANDER
s/Harvey W. Eddy
HARVEY W. EDDY, Brigadier General, USAF
DCS/Personnel"
In his recommendation, Lieutenant Colonel Powell states:
"1. I believe Captain David P. Silverman is convinced this country does not belong in Vietnam and is committed to demonstrate this. His belief is idealistic and would require a miraculous change in human personality.
2. After reading the subject's statement, I, like the Hearing Officer, believe the motivation for Captain Silverman's belief to be political.
3. Recommend disapproval.
s/Samuel G. Powell
SAMUEL G. POWELL, Ch, Lt. Col. USAF
Assistant Chief, Field Extension Office of the Chief of Chaplains"

In urging the validity of Captain Blocker's conclusion that the beliefs of petitioner are "essentially political and sociological," the Government disavows any claim that, because Captain Silverman has political and social views, he cannot therefore qualify as a conscientious objector. Indeed, the Government concedes, one who holds strong religious beliefs against war, and the use of force generally, will likely have consistent political and social views. What the Government contends is that "there is no evidence that . . . Captain Silverman's beliefs are anything more than views on political and social questions.[4] In support of the Secretary's decision, the Government adverts to several written statements made by petitioner in response to instructions appearing on the application for conscientious objector status. First, in describing his "religious training and belief," petitioner states:

"It is also my belief that the concepts of national sovereignty, devotion to a particular flag, or specific territorial control are obsolete. In my opinion nationalism is a dangerous commodity. It fosters selfishness, greed, and misunderstanding between those that participate in it. From man's beginnings until today he has always divided himself into groups or 'nations.' And from the earliest of times there has always been conflict and war. I link the phenomena of war and nationalism directly."[5]

The specific instruction to which excerpted words are responsive is "Describe the nature of the belief that is the basis of your claim." The Government's construction of the quoted passage is that petitioner believes that the "nation state system is a poor way of organizing things."[6] The Government, in its memorandum of law, continues: "This is not a moral, ethical, or religious belief. It is a political belief. And, indeed the Hearing Officer pointed to this very answer as a basis for his conclusion that plaintiff's beliefs were merely political and social and did not satisfy the standard set down in United States v. Seeger [380 U.S. 163 [85 S.Ct. 850, 13 L.Ed.2d 733] (1965)]."[7]

Similarly reflective of petitioner's political and social beliefs, argues the Government, is his description of "how, when, and from whom or from what source [petitioner] received the training and acquired the belief that is the basis of [his] claim." In his application, petitioner speaks of "the folly of our continued actions in Viet Nam and Cambodia" and the "dangerous effects" which the "situation in Southeast Asia has produced" in this country. References are made to a "deep social chasm . . . between left and right," "turmoil on campuses," "backlash by groups such as the construction workers," "formation of a new radical left that employs terror tactics to achieve its goals," "serious economic recession," and neglect of "environmental problems such as pollution, housing, and poverty." Petitioner characterizes these and other domestic problems as examples of the "social and economic evils war can produce in a country half way around the world from the actual fighting."[8]

As further evidence that petitioner's beliefs are not based upon moral, ethical, or religious grounds, the Government notes that Captain Silverman states in his application that "[u]nder no circumstances do I believe in the use of premeditated physical force, particularly the phenomenon of war as an instrument for solving political and social

---

4. Government's Memorandum of Facts and Law, at 2. The Government overstates its case, for the record unquestionably reveals some quantum of evidence that petitioner's beliefs are more than views on political and social questions. However, the scope of judicial review is narrow; the Court need only find a basis in fact for the Air Force determination in order to affirm it.

5. Application, at 2.

6. *Ibid.*

7. *Id.*, at 2–3.

8. *Id.*, at 7–8.

problems."[9] While acknowledging petitioner's statement that he holds his beliefs regarding the evils of war and nationalism "as honestly or fervently as anyone who believes in God or a Supreme Being in the traditional sense,"[10] the Government denies that such an assertion suffices to satisfy the standard set forth by the Supreme Court in Welsh v. United States, *supra*: "The beliefs must be moral, ethical, or religious beliefs. Plaintiff may hold his political beliefs strongly, but if the beliefs are no more than political beliefs, he does not qualify for status as a conscientious objector."[11]

The second and alternative ground for the decision of the Secretary, according to the interpretation of the Government, is that petitioner has failed to demonstrate his opposition to all war. Conceding that the evidence is, at best, conflicting, the Government cites the following statement of petitioner in his application for the proposition that Captain Silverman would participate in a "just war" for the right to retain his beliefs:

"I want very much to lead a full and meaningful life and because of my deep belief that it is extremely priceless and comes only once there is very little I would willingly die for. However, if I could ever imagine myself faced with such a decision, the right to retain my beliefs and live in accordance with what they teach would be an exception."[12]

The Government construes this passage as evidence that petitioner refrains from the kind of sweeping opposition to all war which is required for classification as a conscientious objector, citing United States v. Curry, 410 F.2d 1297 (1st Cir., 1969).

The Government calls the attention of the Court to several statements made by petitioner in his application for status as a conscientious objector. Each statement or passage excerpted by the Government allegedly supports one of two conclusions, viz., that the petitioner's views are political and sociological, not moral, ethical, or religious, and held with the strength of traditional religious beliefs, as required by *Welsh*, or that the petitioner fails to demonstrate that he is conscientiously opposed to all war, or to war in any form. On the basis of those statements cited by the Government, and reproduced above, the Court is unable to discern a basis in fact for the decision of the Air Force not to classify petitioner as a conscientious objector. Whether considered severally or cumulatively, the statements do not support either alternative conclusion framed and defended by the Government.

The fact that the petitioner has developed certain convictions of a political or sociological nature, however intense, does not preclude the possibility that he may also hold "moral, ethical, or religious beliefs about what is right and wrong and that these beliefs [are] held with the strength of traditional religious convictions." Welsh v. United States, supra, 398 U.S. at 340, 90 S.Ct. at 1796, 26 L.Ed.2d 308. The Government selects a relatively short portion of petitioner's description of the nature of the belief forming the basis of his claim, extracts it from context,[13] and submits that such a statement constitutes a basis in fact for denial of status as a conscientious objector. Petitioner's description, however, should be read in its entirety and construed as a whole.

The basis of Captain Silverman's claim and the focal point for his think-

---

9. *Id.*, at 12.

10. *Id.*, at 3.

11. Government's Memorandum of Facts and Law, at 3.

12. Application, at 3.

13. The comment of Judge Zirpoli in Browning v. Laird, 323 F.Supp. 661, 665 (N.D.Cal., 1971), seems particularly apt:

"The court should be wary of taking one sentence out of context, for this procedure of 'culling here and there' has been disapproved by the Supreme Court in First Amendment speech and press cases, See Schaefer v. United States, 251 U.S. 466, 483, 40 S.Ct. 259, 64 L.Ed. 360 (1920) and obscenity cases. See Roth v. United States, 354 U.S. 476, 488–489, 77 S.Ct. 1304, 1 L.Ed.2d

ing is the preciousness and sanctity of human life. So he asserts. The fact that it is *also* his belief that the phenomena of nationalism and war are related would not defeat his claim to conscientious objection. Similarly, references by the petitioner to the adverse domestic consequences of the war in Southeast Asia do not provide a basis in fact for denial of his application for conscientious objector status. Those references appear in his lengthy, detailed explanation of the sources of his beliefs which, again, appears to be more revealing when considered in its entirety. When so considered, petitioner's explanation does not support the finding that Captain Silverman holds beliefs which are "essentially political and sociological." To hold that allusions to the political and societal consequences of war made by petitioner in an effort to explain the evolution of his beliefs, vitiate Captain Silverman's claim, would be to ignore, or at least derogate from, the customary meaning of the word "essentially," as it is used in 50 U.S.C. App. § 456 (j). Furthermore, as the United States Supreme Court has stated, the statutory exclusion of those persons with "essentially political, sociological, or philosophical views or a merely personal moral code" should not be read to exclude those "who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy." Welsh v. United States, *supra*, at 342, 90 S.Ct. at 1797, 1798. See also Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir., 1969). Therefore, even if petitioner is motivated in part by political and/or sociological considerations—and the record undeniably furnishes a basis in fact for such a finding—it is clear that he nonetheless is entitled to the exemption if his opposition to war also derives from moral, ethical, or religious beliefs held with the strength of traditional religious convictions. Welsh v. United States, *supra*; United States v. Seeger, *supra*. It is now well established that the fact that petitioner's application includes what might be considered secular protestations against war, in addition to statements of opposition to force and war based upon moral, ethical, or religious principles, does not in itself disqualify petitioner as a conscientious objector and does not provide a basis in fact for denial of his application. See, *e. g.*, Bohnert v. Faulkner, 438 F.2d 747 (6th Cir., 1971); United States v. Abbott, 425 F.2d 910 (8th Cir., 1970); Packard v. Rollins, 422 F.2d 525 (8th Cir., 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir., 1970); United States v. White, 421 F.2d 487 (5th Cir., 1969); United States v. Haughton, 413 F.2d 736 (9th Cir., 1969); Bates v. Commander, First Coast Guard District, *supra*.

As to the finding that Captain Silverman has failed to demonstrate opposition to all war, as required by Gillette v. United States, *supra*—characterized by the Government as the "second and alternative ground for the Secretary's decision"—the Court is not persuaded that the statement of petitioner's willingness to die for the "right to retain my beliefs and live in accordance with what they teach" strongly, or even remotely, suggests that petitioner would participate in a "just war" fought for the right to retain his beliefs.[14] A reading of the entire answer from which the Government extracts this statement convinces the Court that the inference drawn by the Government is unwarranted. Neither the force of petitioner's unequivocal opposition to "participation in any war or any military establishment that wages war" nor the intensity of his belief in the "preciousness and sanctity of human life," and its "inviolability," is in any way diminished by an expression of his willingness to die for the right to retain, and live in accordance with, his

1498 (1957). In the situation before this court, petitioner's claim taken as a whole establishes his belief in non-

violence and his opposition to participation in all war."

14. See Gillette v. United States, *supra*.

deeply held convictions. Such an expression does not imply a willingness to kill or to participate in a "just war," as the Government contends. It does not, therefore, furnish a basis in fact for finding that petitioner does not conscientiously oppose personal participation in any war and all war, as required by 50 U.S.C. App. § 456(j). Gillette v. United States, *supra*, 401 U.S. at 443, 91 S.Ct. at 832, 28 L.Ed.2d 168. See also United States v. Curry, *supra*. The Court therefore rejects the facts cited by the Government as inadequate to support the alternative grounds for the decision of the Secretary.

A review of the entire record in the light of the applicable decisions of the Supreme Court and the Court of Appeals for the First Circuit does not disclose a basis in fact for the Air Force's denial of petitioner's application for classification as a conscientious objector. While the parties dispute the appropriate characterization of Captain Silverman's beliefs, no question is raised about the sincerity of those beliefs.

Accordingly, it is ordered that the writ of habeas corpus be, and the same hereby is, granted, and that the petitioner be discharged from the custody of the respondents.