Randolph B. **REINHOLD**

v.

James **SCHLESINGER**, Secretary of Defense, et al.

Civ. A. No. 71–1597–C.

United States District Court, D. Massachusetts.

July 29, 1974.

John G. S. Flym, Boston, Mass., for plaintiff.

James N. Gabriel, U. S. Atty., Robert B. Collings, Asst. U. S. Atty., Boston, Mass., for defendants.

## MEMORANDUM and ORDER

CAFFREY, Chief Judge.

This matter came before the Court on the basis of an application for a writ of habeas corpus filed on behalf of Randolph B. Reinhold, M.D., pursuant to the provisions of 28 U.S.C.A. § 2241. Petitioner is a Captain in the United States Air Force Reserve, in which he enlisted pursuant to the so-called "Berry Plan." In substance, the Berry Plan provides that doctors may receive a commission in the inactive Reserve while they are completing periods of internship or residency, after which normally they will be ordered to active duty in the medical corps of the particular branch of service. The respondents are the Secretary of Defense, the Secretary of the Air Force, and various Air Force officers.

An amended complaint was filed herein on September 1, 1971, alleging, primarily, that petitioner is entitled to a complete discharge from the Air Force on the grounds that he is a conscientious objector (CO). He alleges compliance with all requirements for an administrative CO discharge and further alleges that after compiling a complete and adequate record for an administrative discharge his application was denied by the Secretary of the Air Force who had no basis in fact for his action. Petitioner alleges that as a consequence of the lack of a basis in fact for the denial, the denial is illegal and that his continued involuntary retention in the Air Force Reserve amounts to his being held illegally in custody.

Subsequent to earlier hearings, a temporary restraining order against petitioner's entry on active duty was issued on October 29, 1971, and a preliminary injunction to the same effect was filed on March 23, 1972. When the case was called for trial, the parties submitted the matter to the Court for determination on the record on file, plus memoranda of law.

The record establishes that petitioner graduated from Johns Hopkins Medical School in June of 1964, that he applied for appointment in the Air Force Reserve under the Berry Plan in August 1964, that he was commissioned a First Lieutenant in the Air Force Medical Corps in December 1964, and that the appointment carried with it a two-year active duty obligation.

Thereafter, petitioner served his internship and his residency at the Peter Bent Brigham Hospital and the Childrens Hospital Medical Center in Boston, Massachusetts, completing those requirements in June of 1969. From October of 1969 until the present, he has been actively involved in providing medical services to indigent blacks at the Roxbury Dental and Medical Group. On September 1, 1970, an active duty kit was forwarded to petitioner, and on October 21, 1970 he advised the Air Force of his intention to apply for a discharge from the Reserve on the grounds of conscientious objection.

On April 15, 1971, pursuant to the provisions of Air Force Regulation 35–

24, petitioner submitted an application for a CO discharge. Thereafter, he was interviewed by an Air Force psychiatrist and an Air Force Chaplain. The file contains his written waiver of a hearing before a military hearing officer and his election to rely on his own written statement plus ten letters submitted on his behalf from acquaintances and relatives in support of his claim of conscientious objection. The file also establishes that the Chaplain, who interviewed Dr. Reinhold on March 18, 1971, expressed the opinion, in writing, that the petitioner was sincere in his claim of conscientious objection based on opposition to all wars. The Chaplain further expressed the opinion that Dr. Reinhold's opposition was based on his religious training and belief. The psychiatrist who examined Dr. Reinhold, on April 1, 1971, did not express an opinion as to the sincerity of petitioner's belief, but merely reported that his examination "does not reveal any evidence of primary psychiatric disease including psychosis, neurosis, personality or character disorder."

Also included in the file are affidavits of two persons who had known Dr. Reinhold for eleven years, who expressed the opinion that he was sincere in his conscientious objection belief; and an affidavit executed by petitioner's wife, who had been married to him at the time for ten years, which also contained the opinion that he was sincere in his belief.

On the basis of the above-summarized record, the Secretary of the Air Force denied petitioner's application for a discharge on the grounds of conscientious objection.

■ An individual seeking a discharge as a CO must pass the three-pronged test enunciated by the Supreme Court in Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). First, he must show that he is conscientiously opposed to all war in any form. Second, he must demonstrate that his opposition to war is founded upon religious training and belief, as construed in the Supreme Court decisions, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Finally, the applicant for CO discharge must establish the sincerity of his convictions. Failure to meet any one of the three standards will prevent an applicant from qualifying for discharge as a CO.

An examination of the correspondence in the Administrative Record submitted by the Government indicates that the reasons for the denial of petitioner's application consist of the Secretary's opinion that his beliefs are not religious and that they are not sincerely held. The conclusion that petitioner's beliefs are not religious is found in a letter dated July 15, 1971, on the letterhead of the Department of the Air Force, Headquarters United States Air Force, Washington, D. C., to the Secretary of the Air Force/Personnel Council. It states in pertinent part:

"3. An evaluation of Captain Reinhold's case file reveals the following:

a. The religious basis of his alleged beliefs are extremely doubtful since he failed to relate the extent of his religious training/education and is now disenchanted with formal religion. In describing the creed of his professed religion, he quoted one of the ten commandments 'thou shall not kill' and not the creed of the Episcopal Church. He relies on no one for religious guidance and rarely attends church.

b. Each letter of reference commends Captain Reinhold for his voluntary involvement in the inner-city health problems of Roxbury. The Chairman, Department of Surgery, University of Massachusetts, states that Captain Reinhold now plans to make this a full time career. The Chairman, Board of Directors, Roxbury Dental & Medical Group, Inc., (the inner-city project) states, 'we are prepared to do whatever we can to keep Dr. Reinhold in the service of this community.' Although Captain Reinhold's concern for the underprivileged

is noteworthy, it does not serve to excuse him from his military service obligation. Captain Reinhold has been aware of his obligation to serve on active duty since 1964 and never attempted to terminate his military status until the completion of his education and deferment status was in sight. It appears that the officer is now using alleged conscientious objection as a 'mechanism' to further advance his own desires."

The conclusion that petitioner's beliefs are not sincere is found in several letters, but is most clearly stated in a letter dated June 18, 1971, on the letterhead of the Department of the Air Force, Headquarters Air Reserve Personnel Center, Denver, Colorado, to an agency addressed as "USAFMPC, Randolph AFB, Texas." The letter, in pertinent part, provides:

"2. Recommend disapproval. Captain Reinhold states that due to his religious training he is against war as immoral and the least rational solution to conflicts. His moral convictions became more pronounced since his undergraduate days and during 1969–70 he realized he was a pacifist. The fact that he accepted a Reserve commission and the benefits of the Berry Plan must be considered as strong evidence against the sincerity of his request to be classified as a conscientious objector."

■ The scope of review by this Court of this decision is limited to a determination as to whether or not at the time of the Secretary's decision there existed any basis in fact for the conclusion reached by the Secretary. Armstrong v. Laird, 456 F.2d 521, 522 (1 Cir. 1972); Bates v. Commander, First Coast Guard District, 413 F.2d 475, 477 n. 2 (1 Cir. 1969). If a basis in fact existed for the refusal to grant CO status, the refusal was legal and valid. If no basis in fact existed, the refusal was and is illegal.

■■ The first basis for the Secretary's conclusion that petitioner's beliefs are not religious—i. e., that because petitioner no longer actively participated in any organized religion and relies on no one for religious guidance—is clearly erroneous in light of the Supreme Court decisions in *Seeger* and *Welsh, supra.* The applicants for CO status in both of these cases were in a similar position vis-a-vis organized religion as petitioner in the instant case. Nevertheless, the Court upheld the religious basis of the beliefs in both cases. If an individual's beliefs are "sincerely held and . . . in his own scheme of things, religious," then the holder thereof may qualify as a CO. United States v. Seeger, *supra,* 380 U.S. at 195, 85 S.Ct. 850. The Court, in *Welsh,* explained the language in *Seeger:*

"The reference to the registrant's 'own scheme of things' was intended to indicate that the central consideration in determining whether the registrant's beliefs are religious is whether these beliefs play the role of a religion and function as a religion in the registrant's life." 398 U.S. at 339, 90 S.Ct. at 1796.

The second basis for the Secretary's refusal to characterize petitioner's beliefs as religious is the Secretary's belief that the emphasis on petitioner's medical training and practice and his extensive work with indigent black patients in Roxbury, evident from petitioner's application and supporting letters of reference, was not probative of a religious foundation for petitioner's beliefs. However, the Supreme Court in *Welsh* held that a belief is religious where it is shown:

"[T]hat this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." 398 U.S. at 340, 90 S.Ct. at 1796.

■ Where an individual, such as petitioner in the instant case, asserts that he believes in, in his own words, "the essential dignity of all men and the

absolute value of every human life" and that his profession as a doctor and his work in a ghetto area are a "living expression of these principles of love and reason, the dignity and sanctity of each man and all men," this meets the standard of *Seeger* and *Welsh*. See, e. g., Tobias v. Laird, 413 F.2d 936, 939 (4 Cir. 1969); Silverman v. Laird, 339 F.Supp. 876, 884 (D.Mass.1972); Moore v. Dalessio, 332 F.Supp. 926, 929 (D.Mass. 1971).

It is obvious from the foregoing that the reviewing authorities' grounds for not considering petitioner's beliefs to be religious were erroneous. I therefore find that there was no basis in fact in the record for that conclusion.

Turning to the Secretary's rejection of the sincerity of petitioner's belief, in the face of the record described above, all of which tends to establish sincerity on the part of petitioner, the only evidence of a basis in fact for the adverse decision is contained in the reference to the fact that petitioner's "moral convictions became more pronounced since his undergraduate days and during 1969–70 he realized he was a pacifist. The fact that he accepted a Reserve commission and the benefits of the Berry Plan must be considered as strong evidence against the sincerity of his request. . . ."

■■ The contention that Dr. Reinhold's acceptance of a commission under the Berry Plan in 1964 prevented his becoming an honest CO in 1969 is totally devoid of legal merit. A number of cases have established that a late-blooming conscientious objection is just as valid as one arrived at earlier, and several Supreme Court decisions, as well as a decision of the Court of Appeals for the First Circuit, have clearly established that a late-blooming conscientious objection is not to be ruled invalid solely for that reason. See Ehlert v. United States, 402 U.S. 99, 103–104, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); Clay v. United States, 403 U.S. 698, 703, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); Bates v. Commander, First Coast Guard District, *supra*, 413 F.2d at 478.

I find and rule that the record, on the basis of which the Secretary denied petitioner's application for a CO discharge, did not contain a basis in fact to support the action taken, and, consequently, I further rule that it was error for the Secretary to deny the application in the absence of a basis in fact for his action. Accordingly, it is

Ordered:

The application for writ of habeas corpus is allowed and the Secretary is ordered to execute and deliver to the petitioner a discharge from membership in the United States Air Force Reserve.